Michael McKevitt .

*v.*

The People of the State of Illinois.

*Opinion filed February 17, 1904—Rehearing denied April 12, 1904.*

1. Criminal Law—*motion to quash cannot be entered after plea, without leave to withdraw plea.* A motion to quash an indictment cannot be entered after plea, unless, upon leave obtained, the plea is first withdrawn.

2. Same—*what not ground for motion to quash.* That the description of the money which the prosecuting witness claimed was taken from him was included in the description, in the indictment, of so many pieces of money of other kinds that the accused claims he is unable to tell what money he is charged with taking, is not ground for a motion to quash.

3. Same—*testimony of accused that plea was not entered not sufficient to impeach the record.* If the record erroneously shows that a plea of not guilty was entered, the accused, if he acts with diligence in establishing that fact, is entitled to have the record amended at any time prior to adjournment for the term; but the testimony of the accused, alone, is not sufficient to impeach the record.

4. Same—*when motion to amend record cannot be entertained.* A motion, made for the first time after the motion for a new trial had been overruled, to amend the record by striking out the plea of not guilty, claimed to have been erroneously entered by the clerk, cannot be entertained unless supported by affidavit of the accused or by his offer to testify to facts showing the motion was made as soon as possible after discovering the alleged mistake.

5. Same—*when refusal to strike out evidence is not prejudicial.* The refusal to strike out a statement, made by the prosecuting witness after testifying that he had identified the accused as soon as he saw him, that he had been taken by the police to see several men but knew none of them was the right man, is not prejudicial error.

6. SAME—*proof that witness has been convicted can be shown only by the record.* That a witness in a criminal case has been convicted of an infamous crime may be shown for the purpose of affecting his credibility; but this can be done only by introducing the record of his conviction, and not by oral testimony drawn out on cross-examination by the prosecuting attorney for the alleged purpose of ascertaining his residence.

7. SAME—*improper conduct cannot be excused by a statement that the purpose was proper.* Improper conduct by the prosecuting attorney in showing, by oral cross-examination of defendant's witness, that he was serving a term in the penitentiary for robbery, cannot be excused by the statement that the cross-examination was merely to ascertain the residence of the witness.

8. SAME—*when error in permitting oral proof of conviction of witness is not ground for reversal.* Error in permitting proof of the conviction of defendant's witness of the crime of robbery to be elicited by oral cross-examination is not ground for reversal, where the testimony of such witness, even though given full credit, merely tends to show that the witness himself was not present at the scene of the alleged offense.

9. SAME—*fact that accused resisted arrest may be shown.* That the accused resisted arrest may be shown in the first instance, the burden being on the accused to show that such resistance was not for the purpose of avoiding arrest and prosecution for the charge on which he was being tried.

10. SAME—*former conviction of accused may be shown as affecting his credibility.* Where the accused testifies in his own behalf, a former conviction of crime may be shown by the record of his conviction as affecting his credibility, under section 6 of division 13 of the Criminal Code, notwithstanding the amendment in 1899 of section 7 of division 2 of such code. (Laws of 1899, p. 141.)

11. SAME—*effect where accused is sentenced for crime of "robbery, etc."* Where accused is sentenced by the judgment of the court for the crime of "robbery, etc.," the maximum punishment is that provided for robbery without aggravating circumstances, even though the indictment charges that accused was armed and intended to kill his victim if resisted, and the verdict finds him "guilty of robbery in the manner and form as charged in the indictment."

12. SAME—*effect where verdict finds accused guilty of part of the offense only.* The effect of a verdict finding the accused guilty of a certain part of the offense with which he is charged is an acquittal as to the residue.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. CHARLES G. NEELY, Judge, presiding.

Plaintiff in error was indicted at the September term, 1902, of the criminal court of Cook county, for the crime of robbery. The indictment, consisting of one count, charges that Michael McKevitt, on February 14, 1902, in said county of Cook, made an assault upon one Patrick Cahill, and then and there put said Cahill in bodily fear and danger of his life, and against the will of said Cahill did feloniously and violently, by force and intimidation, from the person of said Cahill rob, steal, take and carry away money, personal goods and property of the said Cahill, the indictment enumerating numerous treasury notes of the denomination of one hundred dollars down to two dollars, bank bills of denominations unknown to the grand jury, greenbacks of denominations unknown to the jury, silver coin of the United States, enumerating five hundred of each of the denominations of one dollar down to one dime, five hundred pieces of nickel coin of the United States, one hundred pieces each of gold coin of the denominations of twenty dollars down to one dollar, and two keys of the value of ten cents each, and further charges that the said Michael McKevitt then and there was armed with a revolver, with the intent, if resisted, to kill and maim said Cahill, and that said McKevitt then and there had two confederates present, whose names are unknown to the jurors, said confederates being armed so as to aid and abet said McKevitt. No motion was made by the plaintiff in error to quash the indictment before pleading to the indictment. The record shows a plea of not guilty made by him on September 26, 1902. The verdict of the jury was as follows: "We, the jury, find the defendant, Michael McKevitt, guilty of robbery in manner and form as charged in the indictment." Plaintiff in error moved for a new trial and in arrest of judgment, which motions were, respectively, overruled and exceptions taken. He was then "sentenced to the penitentiary of this State at Joliet for the crime of robbery, etc., whereof he stands convicted."

In the bill of exceptions there appears a recital, under date of November 17, 1902, that on that date "defendant, by his counsel, moved the court to quash the indictment," with reasons therefor, and further reciting that this motion was overruled.

The evidence on the part of the People shows that Patrick Cahill kept a saloon at the north-west corner of Thirty-sixth street and Parnell avenue, in the city of Chicago; that there were two doors leading from the street into the saloon building, the one on the east side opening on Parnell avenue and the one on the south side opening on Thirty-sixth street; that on the night of February 14, 1902, two men came into the saloon by the south door and at the same time the plaintiff in error came in at the east door; that one of the two men first mentioned asked Cahill for a glass of beer, and at the same time McKevitt made a sign to them; that as Cahill turned to get the beer one of the men struck Cahill on the head with a revolver. Cahill testified that he got the revolver away from the man and struck him on the head with it, while Frank Cahill, a son of Patrick Cahill, testifying on the part of the People, said that the revolver used by his father was one that had been kept in the saloon for some time. Patrick Cahill further testified that he struck this man repeatedly on the head with the revolver, until his hand was covered with blood and the revolver slipped from his hand; that he held on to the man and knocked him down three times; that while he was beating this man the man said, "Oh, Cahill! that is enough!" that McKevitt jumped over the bar and fired twice at the son, who ran up-stairs, and McKevitt went to the cash drawer and took two dollars in United States money, a lead half-dollar that had been there for some time, and two keys; that the man with whom Cahill was fighting called to McKevitt for help, and McKevitt came up, put his revolver against witness' stomach and fired,

the bullet being subsequently taken out of Cahill's back; that Cahill's son returned and the men ran out of the saloon.

A police officer, named McCarthy, on the part of the People testified, over the objection of plaintiff in error, that on June 10, 1902, he was walking on Wells street and heard quarreling in a saloon on that street; that he went in and saw McKevitt in the saloon with a revolver in his hand; that he went up to him, and McKevitt pointed the revolver at witness and said, "I will clear you and the whole bunch out of this," and snapped the weapon; that witness took the revolver from plaintiff in error and called two other officers to help arrest him; that while taking him to the station two more revolvers were taken from him while he was attempting to use them on the officers. The other two police officers testified to facts corroborating McCarthy concerning the arrest and finding of the revolvers on the person of plaintiff in error and his attempts to use those revolvers. McCarthy did not inform McKevitt that he was arresting him for the robbery of Cahill, nor did anyone else. They had no warrant for him and did not know that he was wanted for that robbery. The three revolvers, together with the cartridges they had contained, were admitted in evidence over the objection of plaintiff in error.

Both Patrick Cahill and his son testified that McKevitt on the night of the robbery wore a short coat and a soft fedora hat, and that this night was the first time they had seen him.

The defendant, on his part, testified that he never had been in the saloon in question, and that he did not take part in the assault upon Patrick Cahill nor in the robbery; that he never wore a short coat or soft fedora hat, but always wore a long coat and a hard derby hat. When Patrick Cahill was being cross-examined, counsel for McKevitt called one McKnight into court, and Cahill then said that this man McKnight looked like the man

with whom he had fought at the time of the robbery. Later, McKnight, on the part of plaintiff in error, testified that he was the person whom Patrick Cahill had so identified, and that he did not see plaintiff in error at any time during the month of February. The People, on cross-examination of this witness, were permitted by the court (over defendant's objection that this was not the best evidence) to show that this witness had been convicted and sent to the penitentiary for a robbery, which, however, did not appear to be this robbery of Patrick Cahill.

The record of a prior conviction of plaintiff in error for the crime of robbery, for which he was sentenced to the reformatory at Pontiac, was also admitted in evidence on the part of the People in rebuttal.

After the motion for a new trial had been overruled, plaintiff in error moved the court to strike the plea of "not guilty" from the record on the ground that plaintiff in error had not entered such plea and that the same had been entered by mistake of the clerk of the court, and offered to testify to certain facts to show that such plea had not been made by plaintiff in error, whereupon the court said: "You ask me to strike something from the record which you say is not there. The motion is overruled," and refused to hear the evidence offered by plaintiff in error in support of the motion.

CHARLES P. R. MACAULAY, for plaintiff in error.

H. J. HAMLIN, Attorney General, CHARLES S. DENEEN, State's Attorney, F. L. BARNETT, and JOHN R. NEWCOMER, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The motion to quash the indictment seems to have been made after plea. Such a motion cannot be considered after a plea is entered, unless, upon leave obtained,

the plea is first withdrawn. The basis of the motion was that the description of the money (two dollars) which the prosecuting witness, Cahill, claimed was taken from him, was included with the ·description of many pieces of money of other kinds, so that it was impossible for the defendant to tell what money he was charged with taking by force from Cahill. This is not ground for quashing the indictment. If the defendant is entitled to any relief under such circumstances, for the purpose of enabling him to determine which of the money described in the indictment the prosecution seeks to show was stolen by him, it is by motion of another character.

After the motion for a new trial had been overruled, defendant below sought first to have the record amended by striking out the plea of not guilty which appeared upon the record, for the reason that the defendant never had pleaded and for the reason that the plea of not guilty had been entered by a mistake of the clerk of the court, and, upon this motion being overruled, made a motion in arrest of judgment based upon the same grounds, which motion was also overruled. Where a defendant charged with a felony has not pleaded, he may, in the event of conviction upon trial, have the judgment arrested, (*Johnson* v. *People*, 22 Ill. 314; *Yundt* v. *People*, 65 id. 372; *Hoskins* v. *People*, 84 id. 87;) and where the record erroneously shows that a plea of not guilty has been entered, the defendant, upon establishing that fact, may, if he act with diligence, have the record corrected at any time prior to the adjournment of the court at the term at which final judgment in the cause is entered. (*Phillips* v. *People*, 88 Ill. 160; *May* v. *People*, 92 id. 343; *Knefel* v. *People*, 187 id. 212.) In this case the defendant offered to show, by his own evidence, that the plea was erroneously entered. This is not enough. The testimony of the defendant alone is not sufficient to successfully impeach the record. (*Gillespie* v. *People*, 176 Ill. 238.) The action of the court, in this instance, was proper for another reason. The motion and

offer were made orally. It does not appear therefrom when the defendant first knew the record showed the plea. It was his duty to make this motion at the earliest possible moment. Before such a motion should be entertained it should be supported by the affidavit of the defendant or by his offer to testify to facts showing that it was interposed at the earliest opportunity after he had learned that the record did not speak the truth. For aught that appears here, he may have known the condition of the record in this respect before the jury was called into the box. If he did, he could not juggle with the court by waiting to ascertain what the verdict was before determining whether to seek a correction of the record. Upon a motion so shown to be made in apt time it would be the duty of the court to determine what the fact was and make the record accordingly.

When Patrick Cahill was testifying he stated that he recognized McKevitt at once when he saw him after his arrest; that he had been taken by the police to see several other men, but knew that none of them was the right man. Defendant moved to strike out the statement in reference to other men, which was overruled by the court. Whether he had been to look at other men was wholly immaterial, unless, indeed, it could be shown that he had identified some other man as being the man who did the things with which he charged McKevitt. The testimony might well have been stricken out, but it seems to have been given without any objection being made prior to the statement, and we do not think a failure to strike it out prejudiced the defendant.

During the cross-examination of Cahill, counsel for defendant called Michael McKnight to come into court, and Cahill then testified, (indicating McKnight,) "that man is very like the McKnight with whom I said I was fighting." When McKnight testified on the part of the defendant, the assistant State's attorney was permitted to show, on his cross-examination, that he had been im-

prisoned in the penitentiary at Joliet for robbery. This was highly improper. In a criminal case it is proper to show that a witness has been convicted of an infamous crime for the purpose of affecting his credibility, but this can be done only by the introduction of the record of the conviction. (*Bartholomew* v. *People*, 104 Ill. 601; *Kirby* v. *People*, 123 id. 436; *Simons* v. *People*, 150 id. 66.) If this man's testimony, standing alone, showed that McKevitt was not in Cahill's saloon at the time of the robbery this error would necessitate a reversal of this cause. The prosecuting attorney, who thus violated a fundamental rule of practice, should not be permitted to sustain a verdict if his conduct has contributed to the conviction of the defendant. Counsel for the defendant in error argues that the facts in question were developed in ascertaining where McKnight resided, and states that it is always proper to ascertain the residence of a witness, but that the evidence in this case "discloses why this usual and ordinarily harmless question as to residence and occupation was exceedingly objectionable to the gentleman from Joliet." The matter is not to be disposed of in this flippant manner. The prosecuting officer did not cross-examine this man at all upon the testimony given by him in chief. He merely sought to show, and did show, his conviction. Besides, after the witness had testified that he was undergoing imprisonment at Joliet, the further fact was elicited, by an additional cross-question, that this was in consequence of a conviction for robbery, so that it was not solely an investigation of the place of residence. Improper conduct is not excused by a statement that the purpose is proper. The law does not permit the interrogation of a witness in regard to his residence, or any other subject, where the result will be to show, by oral testimony, that which can be legally shown only by testimony of a different character. The objection to this cross-examination came from the defendant. The record is in this situation: Cahill and his son, Frank, positively

identified McKevitt as one of the robbers. McKnight was only shown to have been present and participating by Cahill's uncertain identification of him when he was called into court during Cahill's cross-examination in the manner above stated. McKevitt denied the charge but did not account for his whereabouts at the time the crime was committed. This robbery took place in the month of February, 1902. The only thing McKnight testified to which it can be contended bears on the issues was, that he, McKnight, did not see McKevitt at any time during February, 1902, and that in itself did not tend to show that McKevitt did not commit the crime. McKnight did not testify that he was in the saloon at the time of the robbery or that McKevitt was not. McKnight's testimony is entirely consistent with his own absence from and McKevitt's presence at the saloon when the crime was perpetrated. The only reasonable conclusion that the jury could draw from the proof, if they believed Mc-Knight, was that he was at some place other than the scene of the robbery at the time it occurred, and that Cahill's uncertain identification of him was a mistaken one. Had McKnight sworn that he was there at the time the crime was committed and that McKevitt was not, a situation would be developed in which the argument of counsel for plaintiff in error would be unanswerable. The error was therefore harmless.

It is also urged that it was improper to show that McKevitt resisted the police officers at the time of his arrest. We think this was proper in the first instance. If the person arrested was under the impression that he was being arrested for some other offense than the one for which he is being tried, and resisted because he did not want to be apprehended for such other offense, or for any reason other than a desire to avoid a prosecution and trial for the offense for which he is being tried, the burden rests upon him to show that fact, by cross-examination or otherwise.

The defendant testified in his own behalf, and for the purpose of affecting his credibility the People offered in evidence the record of the criminal court of Cook county, showing that he had theretofore been convicted of robbery and sentenced to the Illinois State Reformatory at Pontiac.  This is said to have been improper, for the reason that the legislature has relieved persons who have undergone punishment in the reformatory from the consequences attendant upon a conviction of infamous crime where the punishment is by imprisonment in the penitentiary.  This is a misapprehension.  The statute of 1845, which is still in force, provides:

"No person shall be disqualified as a witness in any criminal case or proceeding by reason of his interest in the event of the same, as a party or otherwise, or by reason of his having been convicted of any crime; but such interest or conviction may be shown for the purpose of affecting his credibility." (Hurd's Stat. 1901, chap. 38, sec. 426.)

By a statute passed in the same year it was provided as follows: "Every person convicted of the crime of murder, rape, kidnaping, willful and corrupt perjury or subornation of perjury, arson, burglary, robbery, sodomy or other crime against nature, incest, larceny, forgery, counterfeiting or bigamy, shall be deemed infamous, and shall forever thereafter be rendered incapable of holding any office of honor, trust or profit, or voting at any election, or serving as a juror, unless he is again restored to such rights by the terms of a pardon for the offense, or otherwise, according to the law." In 1899 the legislature amended this section by adding thereto the words following: "*Provided, however,* that the foregoing shall not apply to any person who has been heretofore convicted and sentenced, or who may be hereafter convicted and sentenced to the Illinois State Reformatory at Pontiac." (Hurd's Stat. 1901, chap. 38, sec. 279.) This amendment relieves the person who has been convicted and

imprisoned in the reformatory for one of the crimes specified in the last mentioned section, from those civil disabilities visited by that section upon one who has been convicted of the same crime and whose age is such that imprisonment in the penitentiary is the lawful punishment, but the amendment does not in anywise affect the operation of section 426 above quoted. The purpose of the legislature evidently was to lessen the misfortunes consequent upon conviction of any of the specified offenses in the cases of persons who, on account of their youth, were imprisoned in the reformatory instead of in the penitentiary, the object being to extend a leniency to the youthful offender which is denied to one of greater maturity. If the legislature took the view as urged by the plaintiff in error, that when a young culprit was discharged from the reformatory his reformation would be such that the fact that he had been convicted of one of the crimes denounced as infamous should no longer affect his credibility and should not be offered in evidence for that purpose, that body failed to express that view in any legislative enactment. Section 426, *supra,* is not altered by the amendment to section 279, *supra,* made in 1899. It is the conviction for infamous crime, and not the nature or mode of punishment, that may affect credibility. *Bartholomew* v. *People, supra.*

The indictment charged McKevitt with robbery, and further charged that he was at the time armed with a revolver, with the intent, if resisted, to kill and maim Patrick Cahill, and that McKevitt had two confederates present, armed in the same manner, to aid and abet him in the robbery. The jury found him "guilty of robbery in manner and form as charged in the indictment." By the judgment of the court the defendant was sentenced for the crime of "robbery, etc.," and it is said that this is so indefinite that it is impossible to tell whether the sentence was for robbery in the ordinary acceptation of the term, in which event the maximum punishment is

imprisonment for fourteen years in the penitentiary, or whether it is for robbery in the more aggravated form, which may be punished by imprisonment in the penitentiary for the natural life of the offender. Following the reasoning of this court in *Turley* v. *People*, 188 Ill. 628, it cannot be said that the manner and form of the robbery include the intent with which it is charged the defendant was animated while armed with the revolver, or the purpose for which he had confederates present. He could not be punished for the more aggravated form of this crime unless it appeared from the verdict that the jury had found him guilty thereof. He might have been found guilty, if the evidence warranted, of robbery when armed with a dangerous weapon with the intent specified in the statute, or of robbery with a confederate present for the purposes designated by the statute, in either of which instances he could be imprisoned for life. In the judgment before us, the letters "etc." are meaningless. The defendant, by the verdict, was found guilty of robbery, and the judgment of conviction is for robbery of that character for which the maximum punishment is imprisonment in the penitentiary for fourteen years. The verdict cannot be held to be a finding that the defendant was guilty of the graver crime with which he is charged in the indictment unless such graver crime is specifically designated or described in the verdict itself. Where the verdict of a jury finds the accused guilty of a certain part of an offense only, the effect is an acquittal of the residue. (22 Ency. of Pl. & Pr. p. 958.)

A patient examination of this record reveals no reversible error.

The judgment of the criminal court will be affirmed.

*Judgment affirmed.*