In re Estate of E. P. Keshner, Deceased.
John A. Keshner, Executor of Estate of Edward P. Keshner, Deceased, Appellee, v. Fannie Keshner and Julia Keshner, Appellants.

February term, 1938. Opinion filed March 7, 1940. Rehearing denied March 28, 1940. Heard in this court at the

Jos. B. McGLYNN, of East St. Louis, and JOHN T. THOMAS, of Belleville, for appellants.

WILBUR A. TRARES, of Edwardsville, and McHALE & McHALE, of East St. Louis, for appellee.

PER CURIAM.

Edward P. Keshner died testate December 23, 1933, leaving Fannie H. Keshner his widow, Julia Keshner, a daughter and Joseph Keshner, a son, his only heirs. John A. Keshner, a brother of deceased, qualified as executor and is referred to herein as petitioner. He filed a petition under sections 82 and 83 of the Administration Act [Ill. Rev. Stat. 1939, ch. 3; Jones Ill. Stats. Ann. 110.082, 110.083] in the probate court of St. Clair county, citing Fannie H. Keshner, Julia Keshner and Joseph Keshner to appear and show cause why they should not deliver to the petitioner stocks, bonds, notes and cash withheld by them from petitioner and particularly $7,000 Liberty Loan bonds. After a hearing in the probate court the cause was appealed to the circuit court where it was tried *de novo* and resulted in an order granting the prayer of the petition and directing Fannie H. Keshner and Julia Keshner to pay and deliver to petitioner within 30 days $10,119.61 and jurisdiction was retained to compel performance of the order. No order was entered against Joseph Keshner. Fannie Keshner and Julia Keshner appealed to this court and are referred to as respondents.

The order appealed from was entered August 6, 1937. Respondents filed notice of appeal August 23, 1937 and made proof of notice August 24, thereafter. Praecipe for record was filed August 27. The transcript of proceedings was filed in this court November 10, 1937.

Petitioner moved to dismiss the appeal and respondents filed objections thereto and asked leave to file supplemental abstract. Both motions were taken with the

case. The basis of petitioner's motion was that the abstract of record did not show that the praecipe specified a report of the proceedings. The praecipe specified, among other things "report of proceedings at the trial of said cause." The abstract recites "praecipe for record filed August 27, 1937."

An appeal is perfected when the notice of appeal is filed in the lower court and no other step in the perfecting of an appeal is jurisdictional (Ill. Rev. Stat. 1939, ch. 110, sec. 76 (2), ¶ 200 [Jones Ill. Stats. Ann. 104.076]). The abstract must be sufficient to present fully every error relied upon and it will be taken to be accurate and sufficient for full understanding of the questions presented for decision unless the opposite party shall, in accordance with the rules, file an additional abstract making necessary corrections or additions. Section 4 of the Civil Practice Act [Jones Ill. Stats. Ann. 104.004] provides that the act shall be liberally construed to the end that controversies may be speedily and finally determined according to the substantive rights of the parties. It would not be in accordance with the spirit and intent of section 4 and other provisions of the Civil Practice Act to dismiss the appeal for failure of the abstract to show that the praecipe specified a report of the transcript of the proceedings. Other objections are urged based upon alleged defects in the abstract but they are without merit.

The motion of respondent for leave to file a supplemental abstract is allowed and motion of petitioner to dismiss appeal is denied.

The evidence shows that Edward P. Keshner was for many years a stockholder and officer in the Union Trust Company of East St. Louis. He became ill in 1928 or 1929—the exact date is not shown—and was in the hospital practically all the time from October of 1930 to the date of his death. In April, 1929, Fannie H. Keshner sold some bank stock which Edward P. Keshner had given her and received therefor $27,000.

October 8, 1929, he sold 200 shares of the Union Trust Company stock for $30,450 and received a cashier's check payable to his order for that amount. He presented the check bearing his blank indorsement to the Belleville Bank & Trust Company and after paying some indebtedness he owed the bank, he received five drafts aggregating $11,428.89 all payable to his order, dated October 8, 1929. Only three of the drafts need be further considered, those being in amounts of $1,350, $1,401.14 and $5,000 respectively. On October 14, 1929, the three drafts were presented to the Lafayette South Side Bank & Trust Company, bearing the blank indorsement of Edward P. Keshner and the proceeds of said drafts are traceable as follows: $6,913.86 for the purchase of $7,000 U. S. Fourth Liberty Loan bonds, the balance of $792.28 was evidenced by a treasurer's check issued by the said Lafayette South Side Bank & Trust Co. payable to Mrs. E. P. Keshner. The bonds were not registered.

The controversy is in reference to these bonds and the treasurer's checks, or the money which they evidence.

Respondents contend Edward P. Keshner delivered the bonds to Fannie H. Keshner under circumstances amounting to a gift *inter vivos*. It is claimed that the treasurer's check was made payable to Fannie H. Keshner at the direction of Edward P. Keshner. Petitioner denies there was a gift and claims that Fannie H. Keshner and Julia Keshner acquired possession of the bonds without the knowledge or consent of Edward P. Keshner.

Petitioner called respondents as his witnesses and thereby made their evidence competent. From their testimony it appears that prior to October 14, 1929, Julia Keshner attended to some business matters for her father but the extent or nature of such transactions are not known. It is clearly established that

Julia Keshner acted for her mother in all the transactions concerning the matter under inquiry.

From the testimony of respondent Julia Keshner, it appears that Edward P. Keshner delivered the three drafts to her to purchase Liberty bonds. After her father indorsed the drafts in blank, she took them to the Lafayette South Side Bank and Trust Company and purchased the bonds. The bonding department of said bank issued a statement of the sales account, showing the transaction to have been made with E. P. Keshner but Mr. Peterson, the bank representative who had charge of the sale for the bank, testified that he was not present, that there was no telephone conversation and the dealings were all with Julia Keshner. She testified on direct examination that she delivered the treasurer's check for $792.28 to her father, that he indorsed it and delivered it to Fannie Keshner, however, on cross-examination she stated that she had the treasurer's check made payable to Fannie Keshner at the direction of her father. Her testimony is that immediately after receiving the bonds and treasurer's check at the bank, she took them home and handed them to her father, that in the presence of her brother Joseph and herself he delivered the check and the bonds to respondent Fannie Keshner and said, "I give you these bonds for you to do the best you can with them. I do not owe a cent in the world," that Fannie Keshner accepted the bonds and the check; that after Fannie Keshner indorsed the check she delivered it and the bonds to her and she deposited the check in the bank for respondent Fannie Keshner and placed the bonds in her safety deposit box in the National Stock Yards National Bank to be held for her mother. The evidence of Fannie Keshner and Joseph Keshner corroborates the testimony of Julia as to the delivery of the bonds and the statements made by Edward P. Keshner at time of delivery. Many impeaching questions were asked respondents for the purpose of show-

ing their evidence in the circuit court varied from their testimony in the probate court. Some discrepancies are shown but upon the question of delivery of the bonds and what Edward P. Keshner said there is no substantial impeachment.

In 1931, Julia Keshner converted the Liberty bonds into cash and reinvested the proceeds, less $219.94 in Bishop of Chicago bonds. The difference was given to Fannie Keshner. In November, 1932, the Bishop of Chicago bonds were converted and the money used by respondents.

Petitioner did not file an inventory but testified the only assets he had been able to discover was $150. Leo A. Keshner, a brother of deceased, held two promissory notes, one for $1,000 dated April 15, 1928 and one for $200 dated May 19 same year. These notes were filed as claims against the estate and were allowed. Fannie Keshner filed a claim against the estate for $8,500 and alleged it was for money advanced and expended for Edward P. Keshner for hospital bills, doctor bills, insurance premiums, medicine, funeral bills, attorneys' fees, etc. This claim had not been acted upon by the probate court at the time of the hearing.

The will was dated April 5, 1933 and directed the payment of debts and funeral expenses and he gave $100 for masses for his soul and $3,000 to Leo A. Keshner, his brother, and the remainder of real and personal property to Fannie H. Keshner.

Leo A. Keshner testified that in the latter part of 1932 while visiting Edward P. Keshner, at the hospital in Rosebud, Edward P. Keshner gave him five letters bearing dates, October 19 and November 9, 1929, September 19 and September 23, 1930 and November 13, 1932, respectively. The writings are referred to as letters and are in the form of a letter but were never sent through the mails. The one dated October 19, 1929 was addressed to Leo A. Keshner and recited:

"I purchased of Lafayette South Side Bank and Trust Company through Joe Peterson, over the phone, $7,000 of U. S. 4½% Fifth Liberty Bonds, which they were to hold subject to my order and so I told my wife and daughter Julia. The bonds were billed to me in my name and without my knowledge the bonds were this date delivered to my wife and daughter, Julia, who called for them at the bank in St. Louis and who received . . . these bonds together with a cashier's check for $792, that being balance due me from the amount of check which they took for me. My wife and Julia both said they took the bonds and $792 check and put them in a safety deposit box in National Stock Yards National Bank at National Stock Yards. My wife later procured from my room the bank's receipt which I held in my name for the bonds. I have never seen the bonds nor the check. My wife said the bonds were put in box in sealed envelope and marked 'property of E. P. Keshner.' They took bonds and check without my consent." Signed, E. P. Keshner.

The one dated November 9, was addressed: "To Whom It May Concern:" and recites, that on March 24, 1928 he was taken ill and that he visited a doctor who gave him a hypodermic injection which was severe and painful and that in the morning of March 24, 1928, after the effects of said hypodermic injection, he thought he was paralyzed; that he suffered a complete breakdown of his nervous system and had continued so for twenty months, or up to the time of the statement; that his nerves were shattered; that he had a rupture; was sick and unable to work and that his wife insisted on him going to work and that she had taken possession of all his stock and personal property and put everything into her name without his consent and had told the children that he was not able to handle his business affairs but that he had met his obligations, was able to pay his indebtedness and wanted to continue his affairs.

The statement dated September 19, 1930 was addressed to Joseph F. Keshner, a brother, and stated that on October 14, 1929, he purchased of the Lafayette South Side Bank and Trust Company through Mr. Peterson, $7,000 of U. S. Bonds and that they had been delivered to his wife and daughter at their request.

The letter of September 23 was addressed to his brother, referred to the bonds as being held by the wife and stated that all he owed was $600 on note to St. Mary's Hospital and the two notes which the brother held, one for $1,200 and one for $1,500. The one dated November 13, 1932 referred to the indebtedness and stated that the wife and Joe had said they would pay whatever he owed.

Leo A. Keshner testified that his brothers and sister, Laura, were present at the time of the delivery of the letters; that they lived in St. Louis but none of them testified.

Respondents objected to the introduction of these exhibits. Other than the statements in the letters there is no evidence tending to dispute the testimony of respondents that the bonds and check were given by Edward P. Keshner to his wife, so in determining whether there was a gift *inter vivos* it is important to consider whether the statements in the letters were admissible. The statement of the bonds sales account issued by Lafayette South Side Bank & Trust Co. and the check, each bear date October 14, 1929, and the treasurer's check bears the cancellation stamp of the bank under date of October 19, so, that if Edward P. Keshner gave the bonds and checks to his wife it occurred not later than October 19. The evidence of respondents and Joseph Keshner indicates it occurred on or immediately after October 14. There is no evidence other than the dates on the letters indicating when they were written, but accepting such dates as correct, it will be noted that the first letter was written

October 19 and in view of the statement in the letter "the bonds were billed to me in my name and without my knowledge bonds were this date delivered to my wife and daughter Julia" it would appear that all the letters were written after the bonds and check had passed from the possession of the deceased.

To constitute a gift *inter vivos* three essentials must be shown by the evidence (1) intent of donor to make a gift; (2) delivery of the property by the donor to the donee; (3) acceptance by the donee. The testimony of Julia Keshner corroborated by Fannie Keshner and Joseph Keshner clearly establishes an intent on the part of the deceased to make a gift to his wife of the property in question. Their evidence standing alone also establishes delivery to the donee and acceptance by her.

In support of their evidence on the question of delivery there is corroboration in the fact that the bonds and check were always after that date in the possession or under the control of respondents. Possession of the bonds and the check would in itself constitute presumptive evidence of ownership therein. The statements in the letters questioning respondents' right to the bonds and check would be self-serving and had the deceased in his lifetime instituted a suit against his wife and daughter for the recovery of the property the letters could not have been admitted in evidence on his behalf to prove there was no delivery (*Dalby v. Maxfield,* 244 Ill. 214; *Oswald v. Nehls,* 233 id. 438). The general rule is that where the subject matter of the gift is in the possession of the donee, declarations of the donor made in his own behalf after such delivery are not admissible to disprove the gift. In Thornton on Gifts and Advancements, p. 198, sec. 224, the rule is stated thus: "Declarations made by the donor after the time of the alleged gift in favor of the donee, or tending to admit that a donation was made of the subject-matter of the gift to the donee, are ad-

missible on behalf of the donee and those claiming under him, to establish the fact of the gift; but such declarations are not admissible on behalf of the donor, to disprove the gift, on the ground that he cannot defeat a title he has once given, although other declarations, admitting the gift, are in evidence for the donee.'' Numerous cases are cited by the author to sustain the statement of the text, among which are (*Kimball v. Leland,* 110 Mass. 325; *Scheps v. Bowery Sav. Bank,* 97 App. Div. 434, 90 N. Y. S. 26); and to this list should be added *Fender v. Foust,* 82 Mont. 73, 265 Pac. 15.

Petitioner contends the letters were admissible as part of the *res gestae* in showing the intent of Edward P. Keshner to make a gift of the property. They were not admissible on such theory for they were in writing and mere recital of what had transpired before. The Supreme Court of this State has said that the true inquiry in determining whether statements are admissible as a part of the *res gestae* is whether the declaration is a verbal act illustrating, explaining or interpreting other parts of the transaction of which it itself is a part or is merely a history or part of the history of a completed past affair (*McMahon v. Chicago City Ry. Co.,* 239 Ill. 334; *Chicago West Div. Ry. Co. v. Becker,* 128 Ill. 545; *Montag v. People,* 141 Ill. 75). Under the principles announced the letters were not admissible for the purpose of disproving the gift.

Petitioner contends Julia Keshner was serving in a fiduciary capacity. There is no evidence indicating that she did anything more than what her father directed her to do. The evidence shows without conflict that at her father's directions she took the drafts to the bank and carried on the transaction in reference to the bonds and check. It is evident that in so doing she thought she was acting on behalf of her father for the sales account was issued in her father's name. It does not appear from her testimony or the testimony

of Mrs. Keshner that there was any intent to withhold the property from the executor upon any ground other than that it had come into their possession by a gift from the deceased.

It is said that a gift from the husband to the wife is presumably fraudulent as against creditors. That rule has no application to the facts here for to raise the presumption certain essentials must appear: (a) that the person complaining of the transfer was a creditor at the time; (b) that the grantor was then insolvent or such facts and circumstances are shown as would raise a presumption of the insolvency (*Moritz v. Hoffman,* 35 Ill. 553; *State Bank v. Barnett,* 250 id. 312). The notes of Leo A. Keshner filed as claims against the estate bear date prior to the date of the alleged gift but there is no evidence raising the presumption that Edward P. Keshner was at the time of the gift insolvent or unable to meet his indebtedness. There is no presumption of fraud arising out of the fact that Edward P. Keshner gave the property to his wife.

The statements in the letters not being admissible for the purpose of disproving delivery of the property to the donee, the undisputed evidence is that of the respondents that the bonds and check were given to Fannie Keshner and were not owned by Edward P. Keshner at the time of his death. For the reasons stated the judgment of the circuit court is reversed.

*Judgment reversed.*