(No. 34622.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH SUSTAK, Plaintiff in Error.

*Opinion filed September 18, 1958—Rehearing denied Nov. 24, 1958.*

THOMAS W. MCNAMARA, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, WILLIAM H. SOUTH, FRANCIS X. RILEY, and WILLIAM L. CARLIN, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Joseph Sustak, defendant, was indicted in Cook County, along with Charles Struhart, for the murder of Jack Hendrix. Sustak was tried alone and the jury returned a verdict of guilty, fixing his punishment at life imprisonment. Defendant now prosecutes this writ of error to review the judgment entered upon the jury verdict.

It appears from the record that the deceased, Jack Hendrix, along with Luther Bradley, Frank Chapman, and James Mitchell dined together on the evening of February 4, 1953, each having three or four bottles of beer during dinner. After dinner they played pool and then drove in Mitchell's car to Roy's Tavern at 1903 Blue Island Avenue, in the city of Chicago. Hendrix, Bradley, and Chapman each had drinks at the tavern, and left there at about 12:00 P.M. or 12:15 A.M.

Upon leaving the tavern they proceeded to Mitchell's car, and were passed by two men, one of whom remarked that the South was taking over. Hendrix replied to them, and said that he didn't want any trouble. Other remarks were made and, when 25 or 30 feet away, the two men turned with guns in their hands. Bradley and Mitchell did not see the faces of the two men. Chapman, however, identified Sustak as one of the two men. As the two men approached the car, three or four shots were fired from their direction. Bradley received a wound in the right leg,

Hendrix was shot in the left side, and Chapman was struck on the head with a gun.

Chapman testified that the man, whom he later learned was named Sustak, was wearing a coat or jacket and a hat or cap. He couldn't remember whether the coat or jacket was long or short, nor the color of the coat or the headgear. He stated that one of the men had dark skin, a mustache, and a beard. He first identified Sustak's picture as one of the assailants. He later saw and identified Sustak at Bridewell Hospital, although Sustak was then clean shaven. Chapman further stated that he knew Sustak fired one shot, but did not know what he hit.

At the time of this incident police officers Anthony Kasten and Thomas Barnes were at the Coral Inn tavern, at 1835 Blue Island Avenue in the city of Chicago, on police business. While in that place they heard several shots. They immediately went outside. They looked in the direction of the shots and saw two men running east. Kasten observed that one man was wearing a hat and the other was bareheaded, but both appeared to have on jackets.

The officers drove to the scene, observed the wounded men, and then proceeded eastward about four or five blocks, then one block south, and then westward. They had gone about two hundred feet west when they observed two men emerge from a passageway just west of Ed and Mary's Tavern at 1329 Cullerton Street. Kasten testified that both men wore jackets, one wore a hat and the other was bareheaded. Both officers yelled "Police" or "Halt, Police" but the men proceeded into Ed and Mary's. The officers followed them in, Barnes first, followed by Kasten.

Counsel for defendant offered to stipulate that the officers arrested Struhart and Sustak there, and objected to the showing of anything else that happened at that time. The court overruled the objection.

Officer Kasten, upon being called to the stand, came into court supported by two crutches, and dragged and

hobbled to the witness box. Over objection he was permitted to testify that upon entering Ed and Mary's, he saw his partner struggling with a man holding a pistol. Kasten lunged for the gun and was shot in the left side. Kasten fired twice at the man, identified as Sustak, who then fired and struck Kasten in the left thigh, breaking the bone. The officer indicated the wound and described it as "through and through." He then heard shots from the rear of the tavern and was struck twice in the arm. He stated he was given a local anesthetic and a bullet was removed from just left of his lower spine by a Dr. Monroe. He testified that Barnes also was firing during the struggle and Sustak was shot several times. He observed that Sustak had a beard of one eighth to a quarter of an inch long.

Counsel for defendant then moved to withdraw a juror due to the prejudicial nature of the entrance and exit of officer Kasten on crutches, his description and indication of his wounds, and his general physical condition. The motion was overruled.

Officer Barnes, also over objection, testified to the details of the struggle in Ed and Mary's Tavern, the shots fired, and the wounds inflicted. After Sustak fell from his wounds, Struhart surrendered to Barnes. A box of cartridges fell out of Sustak's pocket. Barnes delivered Sustak's gun and the cartridges to the crime detection laboratory. At about 6:45 A.M. Barnes returned to the scene of the attack upon Hendrix and his associates. He found three cartridge shells there, which he delivered to the Crime Detection Laboratory.

Barnes also testified that Sustak had a little beard when he saw him at Ed and Mary's, but when he saw him next day at Bridewell Hospital, he appeared to have been shaved.

Police officer George Miller testified he discovered a bullet in a newsstand near the scene at the corner of Nineteenth and Blue Island.

John G. Sojak, a firearms identification technician for

the Scientific Crime Detection Laboratory testified he examined the weapons, and made four test shots. From his tests and microscopic examination he determined that the bullet extracted from the newsstand, and the three spent cartridges found at the scene of Hendrix's shooting were fired from Sustak's gun.

Mrs. Mary Kraiss, one of the proprietors of Ed and Mary's Tavern, testified that Sustak and Struhart entered the tavern about 12:30 A.M. on February 6, 1953, that Sustak immediately crouched behind a jukebox and pulled a gun and Struhart went to the back of the bar. She substantially corroborated the story of the police officers.

Dr. Jerry Kearns examined the deceased Hendrix and stated there was some burning of the skin around the bullet hole, such as caused by a bullet fired five or ten feet away.

Defendant, at the close of all the evidence moved for a directed verdict of not guilty, which was overruled. The jury retired, after closing arguments and receipt of instructions, and returned their verdict finding defendant guilty and fixing his punishment at imprisonment for his natural life. Motion for new trial was denied and judgment was entered on the verdict on October 2, 1953.

Defendant now prosecutes his writ of error to this court contending that (1) the State failed to prove his guilt beyond reasonable doubt, (2) and that he was deprived of a fair trial by reason of (a) the court's erroneous rulings on admission of evidence, and (b) the unwarranted and prejudicial conduct of the assistant State's Attorney who tried this case.

However, it is first necessary to determine a question, raised by the People, alleging that the defendant secured extensions of time in which to file his bill of exceptions to and including June 1, 1954, that he did not thereupon file the bill, but on June 10, 1954, presented the bill and received an extension of time for filing. The People insist that the said bill was not filed in apt time nor extensions prop-

erly secured, that the court lost jurisdiction and the filing of the bill was void. As the errors relied on for reversal find no basis in the common-law record, the People assert that nothing remains for review by this court. An examination of the abstract discloses that extensions of time to file the bill of exceptions were obtained from time to time, and no failure to file the said bill or to secure additional and proper extensions appears therefrom. Our Rule 38 provides that the abstract will be taken to be accurate and sufficient unless the opposing party files an additional abstract making necessary corrections or additions. (7 Ill.2d 60.) Unless the opposite party files an additional abstract this court will take the abstract as sufficient and accurate so long as it is sufficient to present fully the errors relied upon by appellant. (*Buck* v. *Alex*, 350 Ill. 167, *In re Keshner's Estate*, 304 Ill. App. 640.) The abstract sufficiently presents the matters relied on by defendant as error, and the People failed to file an additional abstract to support their contention. The abstract is received as sufficient and accurate by this court, and we are under no duty to examine the record. Consequently, in the interest of justice we will entertain this writ of error.

It is first urged by defendant that his guilt was not proved beyond a reasonable doubt. In support of this contention he urges that no one saw who shot Hendrix, that only Chapman identified Sustak as one of the assailants and that said identification was inadequate because he testified that Sustak had a beard and mustache, and finally that the State failed to produce disinterested witnesses and evidence to corroborate the police testimony, although such evidence was available.

It is true that no one purports in this record to know who shot Hendrix, but the evidence indicates, without rebuttal, that only the two assailants fired guns at the scene of the shooting, that Sustak fits the description of one of the assailants, that that assailant did fire his gun, that he

was positively identified by one of the victims, Chapman, and the ballistic evidence indicates that the gun taken from defendant's person was fired at the scene of the shooting, hence indicating that defendant was at the scene. The ballistic evidence and Chapman's testimony thus corroborate each other, and Sustak is identified as one of the assailants actively engaged in a felony. It is enough to show that defendant was present and actively participating in the crime. (*People* v. *Buxton*, 362 Ill. 157, *People* v. *Mutter*, 378 Ill. 216.) No bullet was removed from Hendrix's body because it was a "through and through" wound. Circumstances of suspicion are clearly not enough to exclude doubt, (*People* v. *Ciralsky*, 360 Ill. 554,) but the circumstances here show more than suspicion, and are certainly not consistent with innocence.

Chapman's identification of Sustak, as a person having a beard at the time of the commission of this crime, is supported by officers Kasten and Barnes, and even Mrs. Mary Kraiss said Sustak is the same man the officers struggled with in her tavern. Officer Barnes said that when he saw Sustak at the hospital he appeared to have been shaved.

Defendant complains that the State failed to produce the newsstand near the scene, from which the bullet was extracted, or its operator, to corroborate the police testimony. Defendant contends the corroborative evidence and witnesses were available, and should have been produced. However, there is no requirement that the State produce all of its witnesses. True, there are some discrepancies in the testimony, but the jury had the right to determine the weight to be given to the identification evidence. *People* v. *Stella*, 344 Ill. 589.

The evidence additionally discloses that the defendant attempted to evade arrest, immediately after the shooting, and wounded an officer in so doing. Such evidence is properly admitted, (*People* v. *Watkins*, 309 Ill. 318,) and this fact, taken into consideration with all of the other facts

and circumstances, clearly indicates the guilt of defendant. Where the guilt or innocence of an accused has been committed to a jury, this court will not disturb a verdict of guilty unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, and unsatisfactory as to justify the court in entertaining reasonable doubt as to defendant's guilt. (*People* v. *Horton*, 4 Ill.2d 176.) We cannot say that the record in this case raises any such doubt in our minds.

The defendant further contends that he was deprived of a fair trial by reason of the court's ruling on admission of evidence. He asserts that his arrest was illegal and evidence of his resistance thereto was not admissible as probative of guilt on his part. It is true that the officers had no warrant for the arrest of defendant. There is no evidence that the officers intended to arrest the defendant when they first observed him emerge from the passageway. The facts then are as consistent with investigation. The evidence shows that immediately after entering Ed and Mary's Tavern, defendant pulled a gun and hid behind the jukebox. This was before he could possibly have known what business the police had with him. Certainly the police had authority to investigate or arrest for that act, and in consequence of defendant's actions, the shooting that had just occurred, and his resemblance to one of the fleeing assailants, the police were justified in believing he had some connection with the crime. Where an offense has been committed and an officer has reason to believe one has committed the offense, he is authorized to arrest that person without a warrant. (*People* v. *Doody*, 343 Ill. 194.) Certainly in this case the officers had reasonable grounds to believe the defendant had committed the offense, and were fully justified in arresting without a warrant. The evidence in regard to the resistance thereto was properly admitted.

Defendant further complains that he did not receive a fair trial because the court improperly admitted evidence

of the events in Ed and Mary's Tavern, constituting a separate offense for which defendant was separately indicted. He additionally complains that in relating those events the court improperly permitted a recital of the details of the attack upon officer Kasten, to the prejudice of defendant in this trial for the murder of Hendrix. It was proper to receive evidence of a separate crime in resisting arrest, and the burden falls on the defendant to show that he resisted because he did not wish to be arrested for some other reason. (*McKevitt* v. *People*, 208 Ill. 460.) While the details of a different crime than that charged would ordinarily be improperly received, where that separate crime indicates resistance to arrest for the crime charged, is in close proximity in time or locality or otherwise so associated, the details thereof are properly received to show the force and vigor with which the one arrested so resisted, and the extent and nature of the acts committed during his resistance. The details, therefore, are material to the evidence of resistance, and are indicative of and a measure of the consciousness of guilt. *People* v. *Spaulding*, 309 Ill. 292.

Defendant claims prejudice from the physical appearance of officer Kasten in entering and leaving the courtroom on crutches and with his leg supported by a brace, dragging himself 60 to 65 feet both to and from the stand. It appears that defendant, through his counsel, was apprised of the disabilities suffered by Kasten and that previous continuances had been granted for the reason of his infirmities. However, it appears that defendant insisted that the case go to trial over the State's suggestion of the physical condition of Kasten. Witnesses were excluded from the courtroom during this trial and necessitated the lengthy entrance of Kasten, a material witness in the cause. Moreover, defendant failed to make timely objection, but waited until Kasten had appeared, testified and departed before raising any objection. It appears that counsel not only invited

error, but waived any objection thereto if error did in fact exist.

Officer Kasten did describe in detail the wounds which he received in Ed and Mary's Tavern, indicating their location and the injuries suffered, as well as describing in detail the operations necessitated by said wounds and in removing a bullet. All of this evidence was received over objection by defendant's attorney. It was erroneously offered and received, and the State's Attorney should have refrained from presenting such extraneous testimony. Defendant was entitled to a trial free from substantial prejudicial error. (*People* v. *Jackymiak*, 381 Ill. 528.) While this evidence was erroneous, we do not believe it was of such substantially prejudicial nature to alone require reversal, in view of the entire record in this case, the competent evidence being overwhelmingly persuasive of defendant's guilt. *People* v. *Zalapi*, 321 Ill. 484; *People* v. *Spino*, 351 Ill. 83; *People* v. *Wallage*, 353 Ill. 95; *People* v. *Fedora*, 393 Ill. 165.

In a petition for rehearing, the defendant for the first time raises the issue that the receipt of this evidence was prejudicial in this case, where the jury fixed the penalty. Although this evidence was erroneous, it was not of itself prejudicial. Where the entire evidence is so overwhelmingly indicative of guilt, the penalty is life imprisonment and not death, and the sentence is reasonable and consonant with the crime proven, as in this case, the jury was not improperly prejudiced in fixing the punishment.

It is additionally insisted that a bullet removed from officer Kasten's body was improperly admitted into evidence. On the contrary that bullet was material and necessary to the ballistic testimony. It established that the gun found near Sustak's hand in Ed and Mary's Tavern was Sustak's gun, and consequently the same gun which was fired at the scene of the Hendrix shooting.

Finally, defendant objects to the conduct of the prose-

cutor in eliciting the family status of the State's witnesses, and by remarks in his closing argument. Objections made to questions concerning the family status of the State's witnesses were sustained. The "excerpts from Mr. Cooney's final argument" of June 5, 1953, asking the jury to decide whether Chicago should be a law-abiding city or a ruthless town, a "Dodge City," are not of such prejudicial character as to require reversal. *People* v. *McLaughlin,* 337 Ill. 259.

Having reviewed carefully all of the assignments of error raised by the defendant, we fail to find any error requiring reversal. Accordingly, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*