(No. 44217.—)
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LEE PATTERSON, Appellant.

*Opinion filed October 2, 1972.*

LEE PATTERSON *pro se,* appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and NICHOLAS A. DeJOHN, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Lee Patterson, and two others were indicted for robbery. (Ill.Rev.Stat. 1967, ch. 38, par.

18—1.) Following a joint bench trial in the circuit court of Cook County, the co-defendants were acquitted. However, defendant was convicted of robbery and sentenced to the penitentiary for a term of two to five years. The appellate court affirmed (*People v. Patterson (1971), 131 Ill.App.2d 342*), and we granted leave to appeal.

In his *pro se* appeal the defendant claims (1) that he was not proved guilty of robbery beyond a reasonable doubt where the same evidence was insufficient to convict his co-defendants; and (2) that the denial of a free transcript of his preliminary hearing was a denial of equal protection. He thereafter filed an amendment to the petition, reiterating the second contention.

The evidence adduced at trial was conflicting. The complainant testified that as she was walking in the 700 block of North Clark Street in Chicago at approximately 3:30 P.M. on July 7, 1968, she noticed three persons whom she identified as Lee Patterson, Sandra Miller and Russell Brown, walking ahead of her. Patterson turned, approached her, demanded money, wrenched her purse from her hand and took $75. Each then threatened to kill her if she reported the incident to the police. As the defendants departed, Patterson gave Miss Miller and Brown some of the money and they went to a nearby lot. Meanwhile, the complainant hailed a passing police car and accompanied the officer to this lot where the defendants were apprehended and the money recovered from under some nearby debris.

On cross-examination complainant testified that she had left her home and walked a lengthy distance to Chicago Avenue where she boarded a bus which she rode to Clark Street. She was proceeding south on Clark Street toward the Chicago Building Department when the alleged robbery occurred. However, she further admitted that earlier that day she had been shopping at a store located in the "loop" area of Chicago. We take judicial notice of the fact that this area is in close proximity and is directly

south of her purported destination. She also admitted that at the preliminary hearing she had testified that Patterson had given money only to Miss Miller, but "remembered later" that he had also given some to Brown. On re-direct examination she testified that on August 26, 1968, at about 4:30 P.M. Sandra Miller, whom the complainant had seen on several occasions since the incident, and two unidentified men threatened to kill her if she persisted in prosecuting the case.

Officer Shurtleff, who did not witness the occurrence, testified that he was summoned by the complainant who informed him that she had been robbed by the three persons standing in the nearby lot. He proceeded to this area where the complainant identified Patterson as the man who had robbed her. He arrested the defendants and then recovered the money.

Defendant Patterson testified that he had seen the complainant "around" but had met her for the first time at the Huron Club on the day of the alleged offense. They were drinking together from about 10:30 A.M. to 4:00 P.M. and she had been caressing and kissing him at that time. When complainant went to the front of the tavern to play the juke box, he removed the money from her purse and fled through a side door. While he admitted he knew Brown, he maintained that he alone had taken the money, and that neither of the other defendants had been involved.

Defendant's version of the incident was corroborated by three witnesses. The co-defendants testified that they had entered the Huron Club at about 2:30 P.M. on that day and noticed the complainant and Patterson drinking and indulging in amorous conduct at the bar. Miss Miller, having seen Patterson take money from the complainant's purse and flee, informed Brown and began to follow Patterson. Brown then followed Miss Miller in an attempt to prevent her becoming involved in the incident. As Brown approached Miss Miller, who was standing near

defendant in the lot, a police officer arrived and arrested them. Miss Miller further testified that she had seen the complainant in a nearby tavern on a number of occasions but denied having threatened her on August 26, 1968. On that date she testified that she had been arrested on an unrelated charge and after her release was with her attorney at the time of the alleged threat and he informed the court that this was true.

The final witness, Charles Walker, testified that he had been in the Huron Club on the date of the occurrence and had seen Patterson at the bar with the complainant. He saw Patterson take something from her purse and flee. He further testified that he had seen the complainant on several occasions in the B-29 Lounge which was located near the robbery scene. This statement was corroborated by complainant when she stated that she had begun to frequent this establishment subsequent to the robbery.

The factual determination made by a trier of fact is entitled to great weight. However, where the record does not support the finding, this court must reverse. (*People v. Reese, 34 Ill.2d 77, 80; People v. De Stefano, 23 Ill.2d 427, 431.*) While the testimony of one witness, if positive and credible, may sustain a conviction (*People v. Novotny, 41 Ill.2d 401, 411*), we find that complainant's testimony in the present case is sufficiently contradictory and improbable as to raise a reasonable doubt as to defendant's guilt of robbery, thereby requiring reversal of his conviction. *People v. Reese, 34 Ill.2d 77.*

To sustain a conviction for robbery, it must be proved that property was taken from another person by force or threat of force. (*People v. Brooks, 334 Ill. 549;* Ill.Rev. Stat. 1967, ch. 38, par. 18—1.) In the present case, only complainant's uncorroborated testimony establishes this element. Defendant's testimony corroborated by three other witnesses, while clearly indicating that he took the money, negates the use of any force or threats as required to sustain this offense.

Nor do we believe that the evidence establishing Patterson's guilt was stronger than that presented against his co-defendants. We find that if her testimony is believed, it establishes that each defendant was implicated in the offense.

Various aspects of complainant's testimony also seriously detract from her credibility. She admitted frequenting a tavern in the area in which she had been robbed even though this establishment was located a great distance from her home. Her explanation of her route through this area at the time of the robbery appears highly improbable when viewed in light of her being near her alleged destination earlier in the day. Additionally, the defense established contradictions in her testimony concerning the division of the money, and disputed her testimony that she had been threatened on a later date by a co-defendant.

Since the aforementioned is dispositive of this cause we need not consider the other issue raised on appeal.

The judgments of the circuit and appellate courts are reversed.

*Judgments reversed.*