THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THEODORE HALL, Defendant-Appellant.

(No. 57216;

First District (3rd Division)—July 19, 1973.

*Rehearing denied February 19, 1974.*

Paul Bradley, Deputy Defender, of Chicago (Gordon H. Berry, Assistant Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (James S. Veldman, Mariann Twist, and Nicholas P. Iavarone, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant was charged with murder and three counts of attempt murder. After a jury trial in the circuit court of Cook County, he was found guilty of all four charges. He was sentenced to a term of 100 to 150 years for murder and to three concurrent terms of 10 to 20 years for attempt murder. On appeal defendant contends that the trial court erred in failing to give him a proper hearing on his motion for a new trial; that the court, during the jury's deliberations, erred in denying defendant's motion for a mistrial; and that the sentence imposed for murder was excessive.

Seven eyewitnesses testified for the State that on December 28, 1969 at about 1:50 A.M. four men entered a tavern at 856 West 51st Street in the City of Chicago, drew guns and announced a robbery. Although there was no resistance on the part of the victims, shooting erupted. Three patrons were wounded, and one, Richard Fuller, was killed.

Four of the State's witnesses, including Henry Marek, an off-duty policeman, identified defendant as one of the robbers and stated that he had a gun. After the shooting began, Officer Marek shot and wounded Michael Brooks, a co-defendant who pleaded guilty to the charges. Marek testified that he then fired shots at the defendant as

the latter ran out of the tavern. Marek did not know whether he hit defendant.

Shortly thereafter, the police were informed that a man with a gunshot wound was at a nearby hospital. When the police arrived at the hospital the man was gone. The police obtained his name and address, went to the address, found defendant with a shoulder wound, and arrested him.

Defendant testified that, as he stood on a street corner, he was shot in the shoulder by a member of a neighborhood gang. Defendant also testified that at the time of the robbery he was at a district police station protesting the arrest of a friend to an Officer Bailey. His alibi was supported by several friends, and by another co-defendant in the case, Larry Bounds. Officer Bailey testified that he did not see defendant at the police station.

Defendant initially contends that he was not given a proper hearing on his motion for a new trial wherein he charged that there was an improper communication between the bailiff and the jury during its deliberations. To fully understand the issue, it is necessary that we set forth the chronology of certain events in the trial court.

During the jury's deliberations, the judge stated for the record that the bailiffs had received a note from the jurors seeking clarification of some testimony. The judge further stated that he instructed the bailiffs to inform the jury that he would be unable to answer questions and that they should continue to deliberate on the evidence. The prosecutors and defense counsel were present at this time. On July 19, 1971 the jury returned its verdict. The jury was polled and each juror affirmed the verdict. On July 29 defendant's motion for a stenographic transcript was denied. The State refused to waive a written motion, and on August 18 defendant filed his written motion for a new trial. That motion listed seven grounds for reversal. None of the seven claimed errors referred to the jury's deliberations or to an improper communication to the jury. On September 7 defendant first raised this issue. On September 8 defense counsel filed an affidavit which recited as follows:

> "After the trial, I spoke with four (4) of the people who had been jurors, they were of the opinion that the State had not proved its case beyond a reasonable doubt. That among them, several of them indicated that they thought and believed, that they would have to remain sequestered until they came back with a verdict, after having been told that they would have to continue deliberating by the Trial Judge, when they had said that they were unable to return a verdict."

Defendant then requested another continuance to obtain a transcript in

order to learn the names and addresses of the jurors. The judge observed that a transcript was not necessary to learn the identities of the jurors. He noted that the jurors' cards had been available, and that defense counsel had taken copious notes during an extensive voir dire examination. The judge concluded that the defendant was merely engaged in dilatory tactics, denied the request for a continuance and denied the motion for a new trial.

■■■ We believe that the trial court acted properly in denying the motion for a new trial. The very recital of the foregoing facts reveals that the trial judge correctly concluded that defendant was engaged in delaying tactics. Although defense counsel's affidavit recited that he had spoken to several jurors, he argued in court that he needed a transcript to learn the jurors' names and addresses. Consequently the conversations must have taken place immediately after trial. Yet defendant did not raise the issue in his motion filed a month after trial, but raised it for the first time almost two months after trial. If any jurors had mentioned that their verdict was coerced, it is inconceivable that experienced trial counsel would have ignored the issue in his written motion. We conclude that the argument about coercion contained no substance, but amounted to an attempt to delay the proceedings. If the hearing on the motion for a new trial was less than meaningful, it was the fault of defendant, not of the trial judge. (See *People v. Tobe* (1971), 49 Ill.2d 538, 276 N.E.2d 294.) Defendant had the burden of proving that an unauthorized statement was made to the jury, and that the statement prejudiced his right to an impartial jury. (*People v. Berry* (1960), 18 Ill.2d 453, 165 N.E.2d 257.) He failed to meet either of those burdens. The trial judge properly denied the motion for a new trial.

Defendant, without citing any authority in support of the proposition, next contends that, because of the length of the jury's deliberations and because of its request for clarification of testimony, the court erred in denying defendant's motion for a mistrial made during the jury's deliberations.

The jury began its deliberations on Friday afternoon, July 16, 1971. At 11:15 P.M. on that evening the trial court sequestered the jury until the following day. On Saturday July 17 the court sent the jury back to the hotel until Monday morning. On Monday July 19 the jury returned its verdict of guilty. The common-law record reflects that at some time during the jury's deliberations defendant made a motion for a mistrial. The report of proceedings does not reveal when the motion was made or on what legal grounds it was predicated. We note, however, that defense counsel was present and made no objection when the trial judge stated that he informed the jury that he was unable to answer their

request for a clarification of testimony, and instructed them to continue deliberating on the evidence.

■■ Defendant did not raise this issue concerning the propriety of the trial court's denial of his motion for a mistrial in his written motion for a new trial. The issue, therefore, is deemed waived. (*People v. Greer* (1964), 30 Ill.2d 415, 197 N.E.2d 22; *People v. Gratton* (1963), 28 Ill.2d 450, 192 N.E.2d 903.) Moreover, the deliberations were not excessive, and the jury's request for clarification of testimony did not reveal uncertainty as to defendant's guilt. Defendant was tried for one count of murder and three counts of attempt murder. The trial lasted more than four days, and 20 witnesses testified. The record bears out the State's claim that the jury's actual deliberation did not exceed 11 hours. The trial court did not err in denying defendant's motion for a mistrial.

Defendant's final contention is that the sentence of 100 to 150 years imposed on him for murder was excessive. The primary thrust of this argument is that his sentence is grossly disparate from that received by one of his co-defendants, Michael Brooks. Defendant has furnished this court with a copy of the report of proceedings concerning the hearing on aggravation and mitigation as to Brooks.

Prior to trial, Brooks withdrew his plea of not guilty, pleaded guilty to the murder of Richard Fuller, and was sentenced by a different judge to a term of 20 to 50 years. Brooks was 17 years at the time of the offense and had no prior criminal record. However at the time of sentencing, Brooks also pleaded guilty to two crimes unrelated to the present offense: to an armed robbery in which he took cash and an automobile from the victim, and to an intentional shooting of a bartender just three days prior to the instant crime.

Defendant was 18 years of age at the time of committing this offense and was 20 years of age at the time of sentencing. He had one prior conviction for burglary, for which he had been placed on probation.

■■ We recognize that sentencing is peculiarly within the province of the trial court, and that a reviewing court should exercise its power to reduce sentences only with considerable caution. (*People v. Taylor* (1965), 33 Ill.2d 417, 211 N.E.2d 673.) We also recognize that the murder of an unresisting victim was a heinous crime. However the gross disparity between the sentencing of Brooks and defendant was not justified. Their participation in the offense was equal. Although Brooks, unlike defendant, had no prior criminal record, he pleaded guilty to two other violent crimes. Trial courts are entitled to exercise their sound discretion in sentencing defendants, but fundamental fairness and the need to create a respect for the law requires that defendants who are similarly situated may not receive sentences which are so grossly dis-

6

parate. (*People v. Henne* (1973), 10 Ill.App.3d 179, 293 N.E.2d 172; *People v. Haynes* (1971), 133 Ill.App.2d 873, 266 N.E.2d 172.) For that reason we reduce defendant's sentence for murder to a minimum of 35 years and a maximum of 80 years.

Accordingly, the judgments for attempt murder are affirmed: The judgment for murder is also affirmed, but the sentence of 100 to 150 years is reduced to a term of 35 to 80 years.

Judgments affirmed as modified.

SCHWARTZ and McGLOON, JJ., concur.