THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARY BEAN, Defendant-Appellant.

(No. 12479;

Fourth District—March 27, 1975.

*Rehearing denied April 30, 1975.*

John F. McNichols and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, for appellant.

Richard J. Doyle, State's Attorney, of Danville (Kai A. Wallis, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant was tried by a jury for aggravated battery and attempted murder charged in separate counts of a single indictment. After the jury had deliberated for 8 hours, the trial judge found them to be unable to agree and dismissed them. Defendant's amended motion for discharge, partly on the grounds that the jury was improperly dismissed and that retrial would place him in double jeopardy, was denied, and he then waived jury trial and stipulated that the evidence before the jury stand as the evidence in the bench trial. The court found him guilty on both charges, entered judgments and sentenced him to 1 to 10 years' imprisonment for attempted murder.

■■ The People confess defendant's contention on appeal that since both offenses arise out of the same act, the judgment on the conviction of aggravated battery cannot stand if the attempt-murder conviction is upheld. (*People v. Lilly*, 56 Ill.2d 493, 309 N.E.2d 1.) No question is raised as to the sufficiency of the evidence.

The heart of the appeal is defendant's contention that retrial as to either charge placed him in double jeopardy.

According to the report of proceedings, after the jury had deliberated for over 7 hours, the following colloquy occurred:

"THE COURT: Let there be a stipulation by and between the defendant and the State that the Court will inquire of the verdict in the following manner: Ladies and gentlemen, have you reached a verdict on all of the issues?

In the event the jury reports in the negative, by stipulation the Court will read to the jury an additional instruction approved by both parties and request that the jury again retire to consider their

verdict. Is that a satisfactory stipulation?

MR. LITAK [Counsel for Defense]: So stipulated."

The jury was then brought in and questioned as stipulated. The foreman answered, "No, Sir, we have not." After an additional instruction was given, the jury retired for 20 minutes and were then returned into court. The judge asked the same question and the foreman gave substantially the same answer. The judge then found the jury to be deadlocked and discharged them.

The report of proceedings at the jury trial gives no indication that any of the trial participants knew at or prior to the time of the discharge whether the jury had reached a verdict on one of the charges. At the time of the motion for discharge, the trial judge stated, and the People concede it to be correct that, prior to verdict, court and counsel had been informed that the jury had agreed on one of the charges but it was not known on which charge or what the verdict was. Among the materials collected from the jury room by the clerk after the jury was discharged was a signed verdict form finding the defendant guilty of aggravated battery. The materials were placed in the clerk's impoundment file without being examined by the court. The court refused to allow the jury materials to be opened and examined at the hearing on the motion for discharge, and the materials did not become available until they became part of the record on appeal.

The fifth amendment to the Federal constitution provides in part:

"\* \* \* nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; \* \* \*."

*Benton v. Maryland*, 395 U.S. 784, 23 L.Ed.2d 707, 89 S.Ct. 2056, made this provision applicable to State proceedings through the fourteenth amendment. A similar provision is contained in section 10 of article I of the Illinois Constitution. Ill. Const. (1970), art. I, § 10.

The most recent Supreme Court case addressing the double jeopardy issue in the mistrial situation, *Illinois v. Somerville*, 410 U.S. 458, 461, 35 L.Ed.2d 425, 429, 93 S.Ct. 1066, 1069, cites *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165, as the "fountainhead decision construing the Double Jeopardy Clause in the context of a declaration of a mistrial over a defendant's objection." In *Perez*, a subsequent conviction after the jury had been discharged as unable to agree in a prior trial was affirmed on appeal. Mr. Justice Story, speaking for a unanimous court, stated:

"We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the

act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere." 22 U.S. (9 Wheat.) 579, 580, 66 L.Ed. 165, 165.

Down through the cases to *Somerville*, the courts have continued to apply the "manifest necessity" doctrine of *Perez*. In *United States v. Jorn*, 400 U.S. 470, 27 L.Ed.2d 543, 91 S.Ct. 547, a declaration of mistrial made on the trial judge's own motion was held to be an abuse of discretion. In that case, which was a prosecution for the preparation of fraudulent tax returns, the trial judge had declared a mistrial after concluding that certain prosecution witnesses had not been adequately warned of their constitutional rights and refusing to allow them to testify until they had consulted attorneys. The majority opinion noted that "no consideration was given to the possibility of a trial continuance; indeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury, there would have been no opportunity to do so." (400 U.S. 470, 487, 27 L.Ed.2d 543, 558, 91 S.Ct. 547, 558.) The majority rejected the approach suggested in *Gori v. United States*, 367 U.S. 364, 6 L.Ed.2d 901, 81 S.Ct. 1523, in which the appellate court could determine which party was the beneficiary of the mistrial ruling, and retrial was prohibited in *Jorn* even though the original trial had been aborted without bad faith or prosecutorial misconduct and regardless of whether the trial judge acted for the benefit of the defendant. Although the majority opinion in *Jorn* applied the "manifest necessity" doctrine rather stringently, it reaffirmed the Court's refusal to apply mechanical rules to the exercise of judicial discretion to declare mistrials. In *Somerville*, a 5-4 decision, the majority applied the "manifest necessity" doctrine to the situation where a mistrial was declared after the trial court concluded that the indictment was insufficient under State law, that the indictment could not be amended or its insufficiency waived, and that the issue could be raised on appeal or in a post-conviction proceeding to overturn conviction; the Court held that retrial was not barred by the Double Jeopardy Clause. *Somerville*.

■■ No case has eroded the rule of *Perez* that the failure of the jury to agree after reasonable deliberation constitutes a "manifest necessity" to declare a mistrial. This rule was most recently reaffirmed by the Illinois Supreme Court in *People v. Nilsson*, 44 Ill.2d 244, 255 N.E.2d 432, *cert. denied*, 398 U.S. 954, 26 L.Ed.2d 296, 90 S.Ct. 1881.

■■ The mistrial in the case under consideration was ordered by the court without the request of either party. The defendant did not object

to it, however, nor did he object to the manner in which the jury was questioned about their ability to agree. Indeed, he stipulated to the original question asked in that regard. In determining whether the jury was properly discharged as unable to agree, whether the court abused its discretion, or whether the defendant impliedly consented to or waived any error in the procedure used, we must review the circumstances surrounding the declaration of the mistrial. (See *United States v. Jorn*.) In *Johnson v. Zerbst*, 304 U.S. 458, 82 L.Ed. 1461, 58 S.Ct. 1019, "waiver" was defined as "an intentional relinquishment of a known right or privilege". This standard has been interpreted very strictly with regard to the waiver of certain constitutional rights. (*Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (right to counsel); *Boykin v. Alabama*, 395 U.S. 238, 23 L.Ed.2d 274, 89 S.Ct. 1709 (guilty plea).) In such cases the courts must take great care to determine that the person protected by the right knows and understands the right and intentionally waives it.

In *Green v. United States*, 355 U.S. 184, 2 L.Ed.2d 199, 78 S.Ct. 221, the Court referred to the *Johnson v. Zerbst* standard in holding that a defendant who had been found guilty of the lesser included offense of second degree murder did not, by appealing his conviction, waive his privilege against double jeopardy on the first degree murder charge. The Court emphasized that in such a situation the defendant has no meaningful choice. We have found no cases where such a strict interpretation of the standard for waiver has been applied to the conduct of accused or his counsel at the very time of the declaration of a mistrial.

The cases discussed in Annot., 63 A.L.R.2d 782 (1959) indicate a split of authority concerning whether the mere failure to timely object constitutes implied consent to a mistrial. In *Himmelfarb v. United States* (9th Cir. 1949), 75 F.2d 924, *cert. denied*, 338 U.S. 860, 94 L.Ed 527, 70 S.Ct. 103; and *Holt v. State* (1930), 160 Tenn. 366, 245 S.W.2d 886, counsel was required to have specific consent from the defendant to consent to a mistrial. In these cases, however, the defendant was not present when the mistrial was declared. In the 1970 case of *United States v. Phillips* (3rd Cir. 1970), 431 F.2d 949, the jury had deliberated for only a short time when they were returned into court and asked "How soon will you be able to reach a verdict?", to which they answered that they didn't know. Without request of either side, the judge then declared a mistrial. The failure of the defendant to object at that time was held to be waiver of any error.

■■ In determining whether waiver occurred here, the stipulation of the parties, the questioning of the jury, and the declaration of the mis-

trial must be considered within the background of the uncertainty of the law concerning the consequences of the jury being able to agree on one but not both of the offenses. The two charges in this case are of such relationship that they must be tried together unless the court "in the interest of justice" orders otherwise. (Ill. Rev. Stat. 1973, ch. 38, par. 3—3(b).) As we have indicated, only one judgment and sentence can be imposed. No contention has been made on review, however, that either offense is the lesser included offense of the other, and they were not so treated in the trial court where instructions were given without objection by defendant that would permit the jury to find the defendant guilty of both charges. We, therefore, treat them as separate offenses.

In *Selvester v. United States*, 170 U.S. 262, 42 L.Ed. 1029, 18 S.Ct. 580, a jury returned verdicts of guilty on three of four separate charges of forgery brought in a single indictment. The jury stated that it could not agree on the other charge. Judgments were entered on the guilty verdicts and sentence imposed. Rejecting some State decisions that had held to the contrary, the Court unanimously affirmed, agreeing that separate verdicts could be received for separate offenses without requiring verdicts on all charges. The Court did not have to decide whether the defendant could be retried on the charge upon which agreement was not reached; nevertheless, the majority opinion pronounced the following dictum (which was rejected by the concurring opinion of three members):

> "Doubtless, where a jury, although convicting as to some, are silent as to other counts in an indictment, and are discharged without the consent of the accused, as was the fact in the *Dealy Case*, the effect of such discharge is 'equivalent to acquittal,' because, as the record affords no adequate legal cause for the discharge of the jury, any further attempt to prosecute would amount to a second jeopardy, as to the charge with reference to which the jury has been silent. But such obviously is not the case where a jury have not been silent as to a particular count, but where, on the contrary a disagreement is formally entered on the record. The effect of such entry justifies the discharge of the jury, and therefore a subsequent prosecution for the offense as to which the jury has disagreed and on account of which it has been regularly discharged would not constitute second jeopardy." 170 U.S. 262, 269, 42 L.Ed. 1029, 1032, 18 S.Ct. 580, 582-83.

An annotation at 114 A.L.R. 1408 describes *Selvester* as the leading case on the subject, and the majority of cases cited, including *Linden v. United States* (3rd Cir. 1924), 2 F.2d 817, and *Dolan v. United States*

(8th Cir. 1904), 133 F. 440, follow its dictum. We have not been able to find an Illinois decision speaking on this subject.

Many Illinois cases such as *People v. Weeks,* 86 Ill.App.2d 480, 230 N.E.2d 12, and *People v. Hinkle,* 408 Ill. 533, 97 N.E.2d 837, involve the situation of the *Dealy* case cited in *Selvester.* Under those circumstances the discharge of the jury without either a verdict or a finding of their inability to agree as to a particular count does bar retrial as to that count. Although these cases are no authority on the question of retrial of charges upon which the jury has been unable to agree at a first trial, the recognition of the verdicts that were rendered in those cases is an indication that Illinois law permits the court to receive verdicts as to some but not all the charges.

Whether the court is required to accept verdicts under those circumstances has not often been discussed in the cases. In *People v. King,* 17 Ill.App.3d 1064, 309 N.E.2d 598, verdicts of not guilty on two of several charges were held to be effective when returned into court even though the judge found them to be inconsistent with other verdicts also brought in, refused to accept them, sent the jury back with instructions to find consistent verdicts, and finally discharged the jury upon their inability to agree on such verdicts. The general uncertainty on the question is illustrated by the statement in a recent opinion of the United States Circuit Court of Appeals for the Seventh Circuit:

> "*Even if we assume, arguendo, that the district court was compelled to accept partial verdicts,* the record here does not warrant the premise that the jury had reached verdicts on some of the counts of the indictment." *United States v. Medansky* (7th Cir. 1973), 486 F.2d 807, 810. (Emphasis added.)

The conduct of defendant's counsel at the crucial time in question was more than the usual failure to object. In a background of the legal uncertainties we have enumerated and the failure of the jury to agree after more than 7 hours, he stipulated that the jury be asked a question about their ability to reach verdicts which precluded their telling the court that they could agree as to one but not both charges. This of itself would be some indication of an agreement that only verdicts as to all the charges would be received.

Subsequently, at a time when court and counsel all knew that the jury was able to agree as to one of the charges, the jury was again returned into court. We must assume that the defendant was present at this time because no contention is made to the contrary. The same question was then repeated to the jury. There was no indication that a further instruction would be given, and the obvious purpose of the question was that a further negative answer would be the basis for a mistrial. Still the

defendant made no objection. The court then took the logically antici-
pated step and did declare a mistrial, and no objection was made then
either. Such conduct gave every indication of acquiescence in the pro-
cedure followed.

Had defendant objected, the court would have had an opportunity to
consider defendant's contentions and to correct any error. The verdict
to be received, however, might have been adverse to defendant, whereas
no conviction would result from a mistrial. If we also "asssume arguendo"
that the court "was compelled to accept partial verdicts," such a re-
quirement could be waived by the defendant. The decision to do so
would be one to be made ultimately by counsel as a tactical or strategic
decision in the course of trial. A.B.A. Standards for Criminal Justice,
The Defense Function § 5.2 (1970).

■■ We rule that the conduct of defense counsel in entering into the
stipulation and then remaining silent under all of the circumstances
amounted to consent to the procedure followed and a waiver of any
requirement that a partial verdict be received.

■■ The format for the receipt of any verdict having been thus deter-
mined, the jury was properly discharged as unable to agree. Even if de-
fendant's failure to object to the mistrial did not constitute waiver of
that issue, his acquiescence in the format for receipt of the verdict con-
tributed to the circumstances under which the judge found the jury
unable to agree. Given the surrounding circumstances, the trial judge
did not abuse his discretion in discharging the jury and declaring a mis-
trial.

Under the facts of this case, the 1962 statement of the Illinois Supreme
Court is still applicable: "We are of the opinion * * * that the de-
fendant may not sit idly by and allow alleged irregular proceedings to
occur without objection, and afterwards seek to reverse his conviction
by reason of those same irregularities." *People v. Mays*, 23 Ill.2d 520,
525-526, 179 N.E.2d 654, 656.

The conviction and sentence for the offense of attempted murder are
affirmed. The judgment of conviction for the offense of aggravated bat-
tery is reversed.

Affirmed in part and reversed in part.

SIMKINS, P. J., and CRAVEN, J., concur.