THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ANTHONY HARDEMON, Defendant-Appellant.

First District (1st Division) No. 62280

Opinion filed March 14, 1977.

Tyce S. Smith, of Springfield, Missouri, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Larry L. Thompson, and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant Anthony Hardemon was indicted for rape and kidnapping. (Ill. Rev. Stat. 1973, ch. 38, par. 11—1 and 10—1.) Also indicted were Robert Dotson for rape and Jackie Jenkins for deviate sexual assault. After a bench trial, Dotson and Jenkins were found not guilty and defendant was found guilty of the offenses charged against him. He was sentenced to four to eight years for rape and one to three years for kidnapping. Defendant appeals, contending that (1) the finding of guilt on the rape charge was inconsistent with the finding of not guilty as to his codefendants, (2) the trial court failed to enter a finding of guilt as to the kidnapping and therefore defendant is presumed acquitted, (3) the evidence was insufficient to prove defendant guilty of both offenses beyond a reasonable doubt, and (4) defendant was deprived of his right

to counsel because his appointed counsel also represented the codefendants whose defenses were allegedly antagonistic to his.

On May 2, 1973, at approximately 1 a.m., complainant was walking toward Stony Island Avenue on 77th Street in the city of Chicago, Illinois. A red tow truck, being driven by Derrick Simmons and containing defendant Hardemon as a passenger, pulled up beside her. The driver asked if she wanted a ride; she said nothing and continued to walk. The truck stopped a second time and she refused the offer of a ride. At this time defendant Hardemon exited the truck and forced her into the vehicle by applying a hard object to her back, which she took to be a weapon. The three drove several blocks to an apartment building, where the complainant was forced to enter an apartment on the third floor. Hardemon, Simmons and complainant went into a bedroom in the apartment and Hardemon and then Simmons had sexual intercourse with her. Dotson then entered the room and, while Hardemon looked on, searched complainant and her belongings for money, pushed her down and had intercourse with her. After that, Jenkins entered the room and forced complainant to perform a deviate sexual act. She was fighting and trying to get away while the acts of intercourse and deviate sexual assault were taking place. Complainant bled from her vagina following the attacks. She was then left alone in the room and fled from the apartment to her home, where she reported the rape to her husband.

Complainant and her husband, who did not have a telephone, went to the vicinity of the apartment to summon the police to report the crime. Approaching the apartment building, they observed Jenkins on the outside, but he entered the building upon their approach. Complainant and her husband stopped a police car passing on the street and reported the crime to Officer David Dioguardi, who called for assistance, then took complainant up to the apartment. She identified Dotson and Jenkins. Dioguardi searched the apartment for the other attackers and, while searching, discovered a blood-stained bedspread and sheet. The laboratory analysis of these items revealed the presence of blood and human spermatozoa.

Dioguardi arrested Dotson and Jenkins and advised them of their rights. On the way to the police station, both Dotson and Jenkins told Dioguardi that they had not touched complainant and that Hardemon and Simmons had brought her into the apartment.

Complainant's husband corroborated both her description of the events (her report of the rape and her bleeding) and the police search of the apartment.

Jenkins testified that he was asleep when the complainant, Hardemon and Simmons entered the apartment. He was awakened by Dotson. Hardemon and Simmons asked to use his bedroom and he assented.

Jenkins watched them enter the bedroom, then one-half hour later Simmons and Hardemon left. Jenkins thought complainant was a prostitute; he entered the bedroom and asked what was going on after Hardemon and Simmons left and she replied that she was "turning a date" and now she was waiting to be paid. Jenkins denied ever having intercourse with complainant. He further stated that he did not hear her scream or cry out, nor did he see her resist in any way.

Dotson testified that after Hardemon and Simmons left, he entered the bedroom and asked complainant if she were a prostitute and she replied "Yes." She told him that she sometimes made $300 a night and that she was charging Hardemon and Simmons $15. Dotson denied having intercourse or oral copulation with complainant and denied hearing her struggle or seeing her resist.

Both Jenkins and Dotson testified that they saw Hardemon bleeding from his penis, but Officer Dioguardi testified that there was no blood on Hardemon's pants in the fly area when he was arrested that night and that Hardemon had not requested medical attention when incarcerated.

Defendant Hardemon testified that complainant voluntarily entered the truck and agreed to perform sexual intercourse for money; that he used no force or threats and that at no time did he rape her against her will. Hardemon testified that he himself bled from his penis. He admitted on cross-examination that he did not himself agree to pay complainant anything.

The court found Hardemon guilty of kidnapping and rape and found Jenkins not guilty of deviate sexual assault and Dotson not guilty of rape.

■■ Defendant argues that because complainant testified to sexual acts forced upon her by Jenkins and Dotson, as well as Hardemon, and the trial court found Jenkins and Dotson not guilty, the conviction of Hardemon for rape must be reversed for the reason that, if she is to be disbelieved in her testimony against those acquitted, it is impossible she should be believed in her testimony against Hardemon. Defendant's argument is based on the contention that the evidence as to each defendant was identical, as it was in the cases cited by defendant in support (*People v. Ethridge* (1971), 131 Ill. App. 2d 351, 268 N.E.2d 260; *People v. Carter* (1974), 19 Ill. App. 3d 21, 311 N.E.2d 213; *People v. Griffin* (1968), 88 Ill. App. 2d 28, 232 N.E.2d 216). It is only under those circumstances that a conviction of one and an acquittal of another can be said to be so inconsistent as to require reversal on appeal. We have examined the record and conclude that the evidence against Hardemon was not identical to the evidence against Jenkins and Dotson. Most significantly, Hardemon admitted having intercourse with complainant, while Jenkins and Dotson denied sexual contact with her. Complainant

testified that she was forced into the truck by Hardemon with what she thought was a weapon. Hardemon alone of the defendants was bleeding or had blood on his penis following intercourse with complainant. Because of these differences, the fact that defendant was convicted, while his codefendants were acquitted, does not raise a reasonable doubt as to defendant's guilt. *People v. Taylor* (1974), 25 Ill. App. 3d 296, 403, 323 N.E.2d 388, 393.

■■ We also disagree with defendant's claim that the trial court failed to enter a finding of guilt on the kidnapping charge. At the conclusion of the trial, the court said:

> "All right. Defendant, Dotson, not guilty. Defendant, Jenkins, not guilty. Defendant, Hardemon, guilty of rape.
>
> Let's see the indictment. Kidnapping on Hardemon. The Defendant, Dotson, Jenkins, are discharged from this case. The bail, Hardemon, will be increased to twenty-five thousand."

Read in the light most favorable to defendant, this language is ambiguous at worst. Where such an ambiguity is urged, the reviewing court may look to the sentencing proceeding for resolution of the ambiguity. (*People v. Tolentino* (1966), 68 Ill. App. 2d 480, 216 N.E.2d 191.) The record reveals that the trial judge sentenced the defendant separately for kidnapping to a term of imprisonment of from one to three years, plus three years parole. Defendant was found guilty of kidnapping.

■■ Furthermore, we have reviewed the record and are convinced that the trial court was correct in finding the defendant Hardemon guilty of both kidnapping and rape beyond a reasonable doubt. Complainant testified that defendant Hardemon forced her into the truck by applying what she reasonably believed to be a weapon to her back and forced her into the apartment where the rape took place. She testified that while the acts of intercourse and deviate sexual assault took place she was fighting and trying to get away. Her statement that she was forced against her will to have intercourse with defendant Hardemon is corroborated by the testimony of her husband and Officer Dioguardi, to whom she reported the crime immediately after it occurred. Defendant testified that he had intercourse with complainant with her consent and that he had not agreed to pay her anything for sexual services. Complainant's testimony as to defendant's use of force and defendant's claiming consent raised a question of credibility. It is the function of the trier of fact to determine the credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. "Where the evidence is merely conflicting a court of review will not substitute its judgment for that of the trier of fact." (*People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733, 735.) While a complainant in a rape case must resist the act in such a manner as to indicate that it is against her will (*People v. Tocco*

(1952), 413 Ill. 305, 108 N.E.2d 762), "resistance and outcry are unnecessary, however, where the victim is restrained by fear of violence or where such acts would be futile and endanger the life of the female." (*People v. Montgomery* (1974), 19 Ill. App. 3d 206, 210, 311 N.E.2d 361, 364.) In the case at bar, complainant was taken by two strangers to an apartment where there were four other strangers. During each sexual act one other person was present. To scream would have been foolhardy.

Cases cited by defendant are clearly distinguishable on their facts. *People v. Faulisi* (1962), 25 Ill. 2d 457, 185 N.E.2d 211, reversed the trial court where there was no showing of any weapon or any object believed by the complainant to be a weapon, no cry for help although the alleged rape took place in the complainant's home and neither the complainant nor her husband called the police—they were called by defendant's wife at defendant's request. In *People v. Williams* (1961), 23 Ill. 2d 295, 178 N.E.2d 372, the complaining witness suggested the act herself after permitting defendant to take liberties with her body, then asked defendant to walk her home. The complaining witness in *People v. Scott* (1950), 407 Ill. 301, 95 N.E.2d 315, testified that after the alleged rape she stayed in the apartment, sometimes alone, for another day and night, submitting to sexual acts, cooking, cleaning and doing the laundry. In those cases, consent can be inferred from the acts of the complainants. We find no factual parallels to the case at bar.

The trial court here saw and heard the witnesses. His determination that the defendant was proved guilty of both rape and kidnapping beyond a reasonable doubt will not be disturbed. *People v. Sims* (1972), 5 Ill. App. 3d 727, 283 N.E.2d 906.

■■ ■ Nor do we agree with defendant's contention that he was deprived of his right to counsel. A person accused of a crime has the fundamental, constitutional right to assistance of counsel for his defense. A court which has appointed counsel to represent an accused has the duty to refrain from requiring appointed counsel to represent, concurrently, codefendants whose interests diverge from those of the accused, when the possibility of that divergence is brought home to the court. (*Glasser v. United States* (1942), 315 U.S. 60, 76, 86 L. Ed. 680, 62 S. Ct. 457.) "However, the mere fact that defendants are to be tried jointly does not necessitate the appointment of separate counsel for each of them." (*People v. Normant* (1975), 25 Ill. App. 3d 536, 540, 323 N.E.2d 553, 557.) On appeal, defendant has the burden of showing that he and his codefendants had antagonistic defenses or that his appointed counsel had other conflicts of interest in defending his clients during the criminal proceedings. *People v. Robinson* (1969), 42 Ill. 2d 371, 247 N.E.2d 898.

■■ Hardemon raised the defense of consent. His codefendants Jenkins and Dotson denied having sexual relations with the complainant.

We find no antagonism or conflict between these defenses, either per se or in the record of this trial. The defendant points out that both Jenkins and Dotson testified that Hardemon was in the bedroom with the complainant and that post-arrest statements of Jenkins and Dotson to the police, which placed Hardemon in the bedroom, were admitted into evidence. Because Hardemon testified that he had intercourse in the bedroom with the complainant, Jenkins and Dotson added nothing by their testimony to the proof of Hardemon's guilt. Nor do the post-arrest statements create any conflict or antagonism, because defendant's defense was consent.

We find nothing in the record to indicate that the outcome as to defendant would have been different had he been represented by separate counsel. (*People v. Williams* (1966), 36 Ill. 2d 194, 222 N.E.2d 321.) Defendant was not deprived of his right to counsel under the facts of this case.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and MEJDA, J., concur.