THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALFONSO HILL, Defendant-Appellant.

Fourth District   No. 13661

Opinion filed November 17, 1978.

880

882

CRAVEN, J., dissenting.

John P. O'Rourke and Mark L. Kramp, both of Dukes, O'Rourke, Stewart & Martin, Ltd., of Danville, for appellant.

William J. Scott, Attorney General, of Chicago (Donald B. Mackay, Melbourne A. Noel, and Joan C. Carroll, Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his convictions upon jury verdicts of felony murder and robbery (Ill. Rev. Stat. 1973, ch. 38, pars. 9—1(a)(3), 18—1) and the respective sentences of 35 to 100 years and 6 2/3 to 20 years. The jury found defendant guilty of burglary (Ill. Rev. Stat. 1973, ch. 38, par. 19—1), but it appears that no sentence was imposed. Defendant was acquitted upon a charge of murder as defined in section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(2)).

The charges arose from the entry of defendant and co-defendants, Harris and Taylor, into a darkened rural home for purposes of burglary. In fact, the residence was occupied by a man aged 73 years, who was set upon, severely beaten, and was dead when found. His billfold and currency were taken during the course of the beating.

Prior to trial, Harris pleaded guilty to burglary and testified in behalf of the prosecution. A trial of defendant and Taylor, jointly, was declared to be a mistrial for the reason that the jury was unable to reach a verdict. Thereafter, Taylor moved for severance alleging antagonistic defenses vis-a-vis defendant and that motion, as well as a motion for a change of place of trial, was granted. Upon the trial of Taylor, he was acquitted.

An initial issue arises from the discharge of the jury upon the determination of mistrial on April 10, 1975. Thereafter, on May 22, defendant and Taylor filed motions for discharge alleging constitutional double jeopardy and a right to discharge under section 3—4(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 3—4(a)(3)).

In argument upon the motions in the trial court it was conceded that no objection was made to the form of the questions asked of the jury or the entry of the order for the discharge of the jury. While not suggested or referred to in the briefs, the record of the minutes of the trial court discloses the following details: On April 8, 1975, the jury retired to deliberate at 1:06 p.m. and continued until 10 p.m. On April 9 at 9:15 a.m., the jury resumed deliberations. At 10:45, the jurors advised that they had

been unable to reach a verdict. The trial judge and counsel agreed that the jury should be recalled into the courtroom and that the court should instruct the jurors "based upon the American Bar Association suggestions * * *." (See *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601.) Following a lunch the jury was so instructed and resumed deliberations at 2:10 p.m. There is no specific notation as to how late they continued on that date. On April 10, the jury resumed consideration of the verdict at 9:15 a.m., and at 10:45, defendants and counsel being present, the court directed that the jury be returned to the courtroom. The court's minutes note, "Court is advised that the Foreman considers the jury to be hopelessly deadlocked."

A transcript attached to the motions for discharge in the trial court discloses the following:

"THE COURT: Mr. Paro, is it correct you have been selected as Foreman of this Jury?

MR. PARO: Yes, your Honor.

THE COURT: Would you please rise and answer several questions I have prepared for you as Foreman. I will ask you first, have you been able to reach a verdict in this case? Answer Yes or No—have you been able to reach a unanimous verdict in this case?

MR. PARO: Yes and no, your Honor.

THE COURT: The answer can't be both, Mr. Paro.

MR. PARO: I don't know how to answer your Honor.

THE COURT: If you have not been able to reach a unanimous verdict the answer is no.

MR. PARO: No.

THE COURT: Do you believe it is possible or impossible to reach a unanimous verdict in this case?

MR. PARO: Can I ask a question, your Honor, or not?

THE COURT: I would rather you would not. Do you believe it is impossible?

MR. PARO: Yes, your Honor, it is.

THE COURT: Do you believe that the jury is hopelessly deadlocked?

MR. PARO: Yes, your Honor.

THE COURT: You may be seated."

The balance of the transcript discloses that no objection or motion was made with regard to the proceedings and that following departure of the jury, counsel immediately discussed and agreed upon the dates for a new trial.

■■ In factual context, the case most nearly resembling this opinion upon the constitutional issue is *People v. Bean* (1976), 64 Ill. 2d 123, 355 N.E.2d 17, which affirmed the appellate court opinion found in 26 Ill. App. 3d

1090, 325 N.E.2d 679. Citing prior Illinois authority, the supreme court stated that:

> " '* * * [T]he law has invested courts of justice with the authority to discharge a jury from giving any verdict whenever, in the court's opinion, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. Courts are to exercise a sound discretion on the subject and it is impossible to define all the circumstances which would render it proper to interfere. We are of the opinion that such a discharge constitutes no bar to further proceedings and gives no right of exemption to the prisoner from being again put upon trial. [Citations.]' 23 Ill. 2d 520, 524.
>
> In the absence of an abuse of discretion by the trial court when it discharges a jury because of its failure to reach a verdict, reprosecution is not barred." 64 Ill. 2d 123, 127-28, 355 N.E.2d 17, 19.

■■ Defendant also claims a violation of section 3—4(a)(3) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 3—4(a)(3)), which provides that a prosecution is barred if defendant was formerly prosecuted for the same offense, if such former prosecution "[w]as terminated improperly after the jury was impaneled and sworn or, * * * before findings were rendered by the trier of facts, * * *." The operation and effect of that statute was neither raised nor considered in *Bean*. No authority has been cited and we find no reason to conclude that the operation and effect of the statute calls for any different standard or measure than that found in cases concerning constitutional double jeopardy.

In *Bean*, the jury had deliberated for eight hours. It was stipulated by counsel that the court should inquire whether the jury had "reached a verdict on all of the issues?" and that if the report of the jury was negative the court would give an improved instruction. Such additional instruction was given and the jury retired to deliberate. After 20 minutes, the jury was returned to the courtroom and reported that no verdict had been reached. The court, thereupon, found the jury to be deadlocked, declared a mistrial and discharged them.

The appellate opinion notes that prior to the giving of the additional instruction the trial judge and counsel were aware that the jury had reached a verdict on one count, but neither the count nor its verdict was known. The supreme court found no abuse of discretion in ordering a mistrial and found it unnecessary to consider the question of waiver of double jeopardy discussed in the appellate court opinion.

■■ Here, the record shows that the jury had deliberated for some eight to ten hours over a span of two days, had received an appropriate instruction, and it further deliberated eight or more hours overnight and into the following day. We will not presume that defendant and counsel

were unaware and taken by surprise that, when the jury was recalled to the courtroom for the second time, the question of mistrial and discharge of the jury might arise. There is no contention that either a motion was made while the jury was present at that time or, that an objection was presented to the court.

■ The meaning of the response of the foreman to the trial judge's inquiry is entirely speculative. It furnishes no basis for a conclusion that the jury had, in fact, agreed upon and signed a verdict as to any one defendant or any one of the counts submitted to it. The record discloses no motive for the declaration of a mistrial other than the inability of the jury to reach a verdict. *People v. Partee* (1977), 52 Ill. App. 3d 178, 367 N.E.2d 188.

■ In *People v. Bean* (1975), 26 Ill. App. 3d 1090, 325 N.E.2d 679, the opinion noted that extensive research upon the question discloses that the authority of the trial court to receive a partial verdict in a criminal case is uncertain. In the light of the right of a criminal defendant to a jury trial and upon consideration of possible trial tactics in his defense, we will not find an abuse of discretion in the failure of a trial judge to *sua sponte* seek out an unknown, uncertain verdict or partial verdict and enter judgment thereon. We need not now examine the exercise of judicial discretion in circumstances such as this upon stipulated questions directed to the jury as to what, if any, verdicts had been reached.

Defendant argues that he was not proven guilty beyond a reasonable doubt because the co-defendant, Taylor, whose trial was severed, was acquitted upon what was said to be substantially the same evidence. While the case was pending upon appeal, defendant moved to supplement this record by filing the report of proceedings in Taylor's separate trial. That motion was denied by divided court.

In support of such argument defendant cites *People v. Ethridge* (1971), 131 Ill. App. 2d 351, 268 N.E.2d 260; *People v. Griffin* (1967), 88 Ill. App. 2d 28, 232 N.E.2d 216; *People v. Patterson* (1972), 52 Ill. 2d 421, 288 N.E.2d 403; *People v. Carter* (1974), 19 Ill. App. 3d 21, 311 N.E.2d 213; *People v. Beasley* (1976), 41 Ill. App. 3d 550, 353 N.E.2d 699; and *People v. Hardemon* (1977), 46 Ill. App. 3d 1052, 361 N.E.2d 680. No case cited considers the separate record of a co-defendant tried separately before different triers of fact. Our research has found no such instance. Cases collected and annotated in Annot., 22 A.L.R.3d 717 (1968), concerning inconsistent criminal verdicts among co-defendants, are limited to those instances where the co-defendants are tried together and jointly. *Patterson*, the supreme court case cited, concerned co-defendants who were tried together at a bench trial wherein one co-defendant was convicted and one acquitted. The reviewing court found the evidence of guilt to be inconsistent and improbable testimony. In *People v. Stock*

(1974), 56 Ill. 2d 461, 309 N.E.2d 19, the co-defendants were tried together before a jury. The reviewing court found that the evidence was not identical as to all defendants.

Amongst the remaining appellate court opinions cited, each concerned a joint trial of the co-defendants with the variation found in *People v. Carter* (1974), 19 Ill. App. 3d 21, 311 N.E.2d 213, and *People v. Beasley* (1976), 41 Ill. App. 3d 550, 353 N.E.2d 699, that the co-defendants were tried together upon the same evidence, but one co-defendant was tried by jury while the second was tried before the court. In *Beasley*, the reviewing court considered that the verdicts should be consistent because the defendants were heard upon identical evidence. In *Carter*, the reviewing court found that the prosecution evidence was inconsistent and contradictory, and since the defendants were tried upon the same evidence, the inconsistent verdicts raised a reasonable doubt.

The record does not support defendant's position that the evidence presented in the separate trials was substantially identical. This record discloses that the discovery supplied by Taylor raised a specific defense of alibi and named some dozen witnesses, apparently residents of the community who would testify in his behalf.

Defendant's briefs on appeal and the record at trial reflect that defendant admitted that he was present at the time and place in evidence, but sought to prove that he was so intoxicated by reason of the use of alcohol and marijuana that he was not able to form the necessary intent. Colloquy and argument of counsel appearing in this record during this trial discloses that the trial counsel and the court recognized and were aware of the differing theories of defense, *i.e.*, that Taylor presented an alibi in contrast to the defense of defendant during his separate trial.

■■ There is additional evidence arising in the fact the defendant's glove was found beneath the body of the victim. In *People v. Hardemon* (1977), 46 Ill. App. 3d 1052, 361 N.E.2d 680, co-defendants were tried together before the court but the evidence was not identical in that the convicted co-defendant admitted having intercourse but presented the defense of consent. In *People v. Nickson* (1978), 58 Ill. App. 3d 470, 374 N.E.2d 804, it was held that the evidence was not identical and that it was not an inconsistent verdict where the acquitted co-defendant presented evidence which refuted that of the prosecution.

An underlying offense, burglary, which supplied the reason for going into the home of the victim requires a specific intent to commit a felony or theft. (Ill. Rev. Stat. 1973, ch. 38, par. 19—1(a).) In *People v. White* (1977), 67 Ill. 2d 107, 365 N.E.2d 337, it was held that a specific intent to deprive a person of property was an element of the offense of robbery and that intoxication to a degree which rendered defendant incapable of

forming that mental state required for the offense of robbery entitled him to be acquitted.

It is defendant's theory that by reason of such intoxication, he was unable to form an intent to commit a felony or theft. The evidence of the intoxication lies in the testimony of defendant concerning drinking beer and wine and smoking marijuana on the day preceding this offense, sleeping throughout the morning of the succeeding day and drinking beer and wine and smoking marijuana prior to the time that the individuals began to search for a residence to burgle.

By his testimony defendant admitted that he entered the home of the decedent and was present when, at least, some of the fatal blows were struck upon the victim. He admitted that a glove found beneath the body belonged to him, although he had stated that he lost his gloves at some unknown place and time. The sum of defendant's testimony was that he was in a stupor or daze at the scene of the burglary and did not understand what was taking place.

Defendant was impeached upon this issue by his testimony at the prior trial concerning being in various rooms in the house and searching for things to be taken. At this trial defendant's testimony suggests a clear recollection of the times, places and quantities of the purchases and use of beer and wine and marijuana over a period of two days. A jury could reasonably conclude that in terms of use by three young men during such period of time the quantity described was not remarkable.

■■ Harris testified to defendant's active participation in the details of the actions of defendant. The credibility of defendant's testimony was a matter for the determination of the jury. Under the evidence of the record, it can not be said that there is a reasonable doubt of guilt arising from the evidence in the matter of defendant's participation in the events and the jury's determination of his requisite mental state. *People v. White* (1977), 67 Ill. 2d 107, 365 N.E.2d 337.

Defendant urges that the prosecution indulged in inflammatory and prejudicial argument by stating that the jury was serving as a part of the judicial system and that the courts and legislature had been criticized by the public as being too lenient with regard to criminals. The trial court promptly sustained defendant's objection. No motion to strike was made by defendant. It is argued here that counsel did not wish to draw attention to the statement of the State's Attorney and for such reason did not object, but that, nevertheless, the court should have *sua sponte* instructed the jury to disregard the argument. Logically speaking, such *sua sponte* instruction would have supplied or emphasized it, which counsel wished to avoid.

We note that the jury carefully discriminated upon the law and evidence presented and acquitted defendant on the charge of murder as

defined in section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(2)). This fact alone would seem to negate a verdict founded upon passion or prejudice.

■■ In *People v. Berry* (1960), 18 Ill. 2d 453, 458, 165 N.E.2d 257, 259, the court stated:

> "Where it appears that improper remarks do not constitute a material factor in the conviction, or that they are of such a minor character that prejudice to defendant is not their probable result, the verdict will not be disturbed."

The principle was affirmed in *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363. The defendant was convicted of murder. In that case the argument of the State's Attorney included the statement to the jury:

> " 'What are you going to tell this community and what are you going to tell 12,000 Chicago policemen? What choice should they make?' " (52 Ill. 2d 374, 390, 288 N.E.2d 363.)

The court concluded that the improper remarks did not constitute a material factor in the conviction within the language of *Berry*. (See also *People v. Sustak* (1958), 15 Ill. 2d 115, 153 N.E.2d 849; *People v. Tanthorey* (1949), 404 Ill. 520, 89 N.E.2d 403.) Upon the issues presented to the jury in this case, it cannot be said that there is reversible error.

■■ Defendant argues that there is reversible error in that the trial court sustained an objection to defendant's argument describing Harris, the prosecution witness, as a "professional burglar." No motion to instruct the jury to disregard the statement was made. In sustaining the objection, the trial court indicated that he did not believe that the evidence supported the characterization. The record contained evidence by which the jury was advised of certain criminal activities of Harris. In the context of the issues before the jury, there is no merit to the argument.

■■ Defendant argues that the murder sentence should be reduced in that it is disparate in the light of the acquittal of the co-defendant, Taylor, and the sentence for burglary imposed upon the co-defendant, Harris. The argument seeking comparison of defendant's sentence with the acquittal of Taylor reflects defendant's disagreement with the verdict of the jury which heard the evidence at his trial and requires that we presume that such verdict was erroneous. This we cannot do.

■■ Harris pleaded guilty to burglary, a Class 2 felony, and effectively received the maximum sentence which could be imposed at that time. Defendant received an identical sentence upon his conviction for robbery, a Class 2 felony. In his supplemental brief, defendant cites *People v. Henne* (1973), 10 Ill. App. 3d 179, 293 N.E.2d 172, and *People v. Hall* (1973), 17 Ill. App. 3d 1, 307 N.E.2d 664. In each case, the issue of disparate sentence arose when the sentence was imposed for the same offense. We have found no authority that a sentence for murder

may be considered to be disparate as compared with a sentence upon a conviction where murder is not involved.

■■ The trial court noted the wanton, vicious quality of the killing of an elderly man by several young men of adequate strength to take his property without beating him to death. The trial court considered the need to protect the public from such invasions as were described in the evidence, and he advised the defendant of the opportunities for education and development of skills to assist in rehabilitation that might be available while serving the sentence. He further advised defendant his progress toward rehabilitation and release would actually be determined by the Parole Board. In *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, the supreme court determined that the imposition of a sentence is a matter of judicial discretion and that such sentence may not be altered upon review absent an abuse of discretion. We find no abuse of discretion here. The conviction is affirmed.

Affirmed.

MILLS, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

The defendant in this case and a co-defendant, Taylor, were once tried together in Iroquois County. The jury in that case was unable to agree. Thereafter, on the defendant Hill's motion, each defendant was tried separately. The motion for severance can be understood as a trial tactic since it appears that it was Taylor who beat and killed the victim. It appears, however, that Taylor was tried first. He was found innocent of all charges. Hill was thereafter tried and found guilty. He sought a copy of the Taylor record for purposes of urging the issue of inconsistent verdicts.

That contention may or may not have been successful. In any event, we aborted his effort by refusing the record. Such is fundamentally erroneous. We compound the error when the majority opinion speculates on what may have been the evidence to acquit Taylor. That which the majority does denies Hill an effective appeal. (See *Douglas v. California* (1963), 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814.) Indeed, the procedure followed by the majority smacks of the treatment received by Eskridge, condemned by the United States Supreme Court which permitted a trial judge to withhold a transcript if he found that a defendant had an impartial trial and no grave error occurred (*Eskridge v. Washington State Board of Prison Terms and Paroles* (1958), 357 U.S. 214, 2 L. Ed. 2d 1269, 78 S. Ct. 1061). The procedure followed does not comply with the minimum requirements for an appeal as enunciated in a different context

in *Anders v. California* (1967), 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396.

Under the authority of *People v. Hardemon* (1977), 46 Ill. App. 3d 1052, 361 N.E.2d 680, all the evidence should be considered to ascertain the existence of an inconsistency in the verdict. We should not deprive the defendant Hill of the record and then find on the basis of pure speculation that there was no inconsistency. I would withhold judgment until such time as the defendant Hill has an opportunity to examine the record in the Taylor case and make such argument relating to inconsistent verdicts as in the judgment of his counsel may be appropriate.