THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MARTY MULCAHEY, Defendant-Appellee.

Fourth District   No. 4—91—0457

Opinion filed July 16, 1992.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

George F. Taseff, of Bloomington, for appellee.

JUSTICE COOK delivered the opinion of the court:

Defendant was charged, in McLean County case No. 91—CF—7, with six counts of aggravated criminal sexual abuse. (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(d).) On November 6, 1991, the jury was impaneled before Judge Townley, the State proceeded with its case in chief, and then rested. When the trial resumed November 7, the following transpired:

"MR. REYNARD [(the prosecutor)]: Judge, at this time I would like to indicate to the Court that Mr. Skelton [(defense counsel)] and I have discussed the resolution of the case, and that resolution would contemplate that I would be asking leave of the Court to nolle-pros the pending charges against the Defendant with leave to file in three additional counts, which would be referred to the Associate Division for plea and disposition. Those counts are in the process of being drafted.

THE COURT [(Judge Townley)]: Well, you can file in whatever you want to wherever you want to, but I am not going to handle the matter, and I am not going to grant you leave to file them in this case. You can file—you can start a new case if you want to file, but I have got this case on trial; and if you nolle it, that is fine.

Give me your nolle, and we'll start the next case on the calendar, and then you and the Defendant and his counsel can head to the Associate Division with whatever new charges you have and proceed. So have you got your nolle?

MR. SKELTON: Judge, in fairness to the State and to be quite frank with the Court, the disposition that has been discussed involves a plea to certain misdemeanor counts that have been referred to by Mr. Reynard, and I want to indicate on the record that on behalf of Mr. Mulcahey, we are waiving any jeopardy claims or double jeopardy claims that have been attached in regard to this case, and I want to make that clear on the record today. I understand full well that certainly is going to have no impact on this Court today, but for future proceedings is what I am referring to.

THE COURT: Well, let me say that the Court is not granting a mistrial in this case on the basis that there is no jeopardy, because the matter is on trial.

MR. SKELTON: I understand.

THE COURT: This case has been pending since December of last year, and it is an old case, and we finished the State's evidence. So as far as the Court is concerned, I am not going to accept it on—if this Court is confronted with that in the future on a refiling, I believe that jeopardy is attached, and that waiver isn't going to be effective.

MR. SKELTON: I just want to indicate to the Court—

THE COURT: I understand what you're saying. I understand.

MR. REYNARD: May I have a minute to discuss something with the witnesses before I proceed?

THE COURT: Mr. Reynard, at two minutes after 9:00 you said, 'Can we have some time,' and I said, 'Let's make it 10 minutes and not 30 like yesterday,' and it is now 9:25, so take three minutes, and let's get back.

> (Whereupon a brief recess was taken.)

THE COURT: Show for the record Mr. Reynard is back in court. Mr. Reynard?

MR. REYNARD: Judge, again I would ask leave to file three additional counts into this matter, and the reason I renew that request is because of the Court's indications with respect to jeopardy, and I think that would insure against difficulty. I understand Defendant's waiver, but I think that would insure against any difficulty that might arise in the future, and I would again ask that Counts 1 through 6 be dismissed, and the matter referred.

THE COURT: I won't grant you leave to file additional counts in this case. This case is on trial. It has been through the People's evidence. The People have rested. We are ready for the defense's case as to the charges that are pending, the six charges that are pending. The addition of additional counts at this time, I think, is not appropriate, so you will have to decide whether you are going to nolle or go on and finish the trial.

MR. REYNARD: I am handing up a nolle-pros.

\* \* \*

> (Jury returns to the courtroom.)

THE COURT: Thank you for being prompt this morning, ladies and gentlemen. I'm sorry that the Court did not make it clear where you should report this morning, but that was taken care of in time. You have been waiting for us since then.

This matter has been resolved without the necessity of proceeding with the trial, and, because of that, the Court is declaring a mistrial in the case and is excusing you from service."

The State subsequently filed misdemeanor criminal sexual abuse counts against defendant, docketed as McLean County case No. 90—CM—1990, pursuant to the "plea agreement." Defendant discharged his attorney and hired new counsel. Defendant thereafter refused to enter a guilty plea and the State called a new grand jury which en-

912

tered indictments on six counts of aggravated criminal sexual abuse identical to those charged in No. 89—CF—691; these charges were docketed as No. 91—CF—7. Defendant pleaded not guilty and moved to dismiss the charges on the grounds prosecution was barred by double jeopardy. The trial court (Judge Caisley) entered a written order dismissing the charges in No. 91—CF—7, reasoning that since the State had utter discretion to nol-pros the charges, and there were no circumstances constituting "manifest necessity," the trial in No. 89—CF—691 was improperly terminated and the defendant was entitled to discharge in No. 91—CF—7.

The argument could be made that a case belongs to the parties, not the trial judge, and that it is up to the prosecutor to determine what charges should be brought or proceeded with. In response the argument could be made that plea bargains during trial waste precious judicial resources, and it is the duty of a trial judge to exercise control over the parties to the litigation so as to prevent that waste. We need not decide which argument should prevail here, whether the prosecutor had other options available, or even whether the trial court had the authority to refuse to accept a plea or additional charges. The issues to be determined by this court are instead whether defendant, by trial in No. 91—CF—7, would be placed twice in jeopardy for the same charges nol-prossed in No. 89—CF—691 after jeopardy had attached; and whether he waived these protections at trial in No. 89—CF—691.

A defendant's right to be free from double jeopardy finds its basis in three distinct sources. The United States Constitution has a provision against double jeopardy (U.S. Const., amend. V) which is applied to the States via the fourteenth amendment. (U.S. Const., amend. XIV.) (*Benton v. Maryland* (1969), 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056.) Illinois has a constitutional prohibition against placing a criminal defendant twice in jeopardy. (Ill. Const. 1970, art. I, §10.) Finally, Illinois has a statutory prohibition against trying a criminal defendant twice for the same offense, which provides in pertinent part:

"(a) A prosecution is barred if the defendant was formerly prosecuted for the same offense, based upon the same facts, if such former prosecution:

\* \* \*

(3) *Was terminated improperly after the jury was impaneled and sworn* or, in a trial before a court without a jury, after the first witness was sworn but before findings were ren-

dered by the trier of facts, or after a plea of guilty was accepted by the court."

(Emphasis added.) (Ill. Rev. Stat. 1989, ch. 38, par. 3—4(a)(3).)

It has long been recognized that the State, with all its resources and power, should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. *Green v. United States* (1957), 355 U.S. 184, 187-88, 2 L. Ed. 2d 199, 204, 78 S. Ct. 221, 223.

■■ The double jeopardy clause can only be applied if the accused has first been placed in jeopardy of a conviction. A defendant is placed in jeopardy in a jury trial when the jury is empaneled and sworn. (*Crist v. Bretz* (1978), 437 U.S. 28, 57 L. Ed. 2d 24, 98 S. Ct. 2156.) Generally, once a trial has begun and jeopardy has attached, the trial must be followed through to a conclusion unless the defendant consents to the termination or the trial court must declare a mistrial because there is a manifest necessity for the act or the ends of public justice would otherwise be defeated. (*United States v. Perez* (1824), 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165.) One purpose of the double jeopardy clause is to protect the valued right of the accused to have his trial completed by a particular tribunal of his choice. *Oregon v. Kennedy* (1982), 456 U.S. 667, 72 L. Ed. 2d 416, 102 S. Ct. 2083.

A criminal defendant will not be allowed to seek the protection of the double jeopardy clause if a mistrial is declared because of manifest necessity. (*Perez*, 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165.) A trial court may declare a mistrial as a manifest necessity if certain circumstances beyond the control of the parties and the court no longer make it possible to conduct a trial or to reach a fair result upon the evidence. (*People v. Yarbrough* (1989), 179 Ill. App. 3d 198, 200, 534 N.E.2d 695, 697.) Some examples of manifest necessity are a hung jury, a defective indictment, or inflammatory remarks which make a fair trial impossible. In these instances, the court can declare a mistrial and double jeopardy will not be a bar to a second prosecution. (See, *e.g.*, *Perez*, 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165; *Illinois v. Somerville* (1973), 410 U.S. 458, 35 L. Ed. 2d 425, 93 S. Ct. 1066; *United States ex rel. Montgomery v. Brierley* (3d Cir. 1969), 414 F.2d 552.) In examining whether there is a manifest necessity to declare a mistrial, the court should look to all the circumstances involved rather than apply a rigid, mechanical rule. *United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547.

■ Although the judge told the jury here that he declared a mistrial, that was contrary to his other statements, and the true reason for dismissing the jury was the *nolle prosequi* by the prosecution. No circumstances were present which were beyond the control of the parties and thus would require termination of the trial. The decision to terminate was a calculated decision on the part of the prosecution which was not of manifest necessity.

■ A trial also may properly be terminated if the defendant consents to the termination. (*United States v. Scott* (1978), 437 U.S. 82, 57 L. Ed. 2d 65, 98 S. Ct. 2187.) When a defendant consents to a termination, he is considered to have waived his right to have his case decided by a particular tribunal. (*Scott*, 437 U.S. 82, 57 L. Ed. 2d 65, 98 S. Ct. 2187.) This situation most often manifests itself when a defendant moves for a mistrial or fails to object when a mistrial is declared. (*Scott*, 437 U.S. 82, 57 L. Ed. 2d 65, 98 S. Ct. 2187; *People v. Bean* (1975), 26 Ill. App. 3d 1090, 325 N.E.2d 679, *aff'd* (1976), 64 Ill. 2d 123, 355 N.E.2d 17.) Here, however, the defendant failed to object to the prosecutor's motion to nol-pros. A prosecutor's decision to nol-pros must be allowed unless it is part of a vexatious or repetitious course of conduct directed against the defendant, which is not the case here. (*People v. Fulkerson* (1984), 127 Ill. App. 3d 1084, 1086, 469 N.E.2d 1124, 1125.) It would be fruitless to require an objection where such an objection can necessarily have no effect.

■ The State contends the prosecutor's decision to nol-pros was conditioned upon the defendant pleading guilty to the three misdemeanor counts. Generally, when the prosecution nol-prosses charges against the defendant after jeopardy has attached, it is barred from bringing the same charges against him in a subsequent action. (*Fulkerson*, 127 Ill. App. 3d at 1086, 469 N.E.2d at 1125-26; *People v. Foley* (1987), 162 Ill. App. 3d 282, 287, 515 N.E.2d 351, 354; *People v. Miller* (1965), 55 Ill. App. 2d 146, 153, 204 N.E.2d 305, 308, *rev'd in part on other grounds* (1966), 35 Ill. 2d 62, 219 N.E.2d 475; Ill. Rev. Stat. 1989, ch. 38, par. 3—4(a)(3).) The committee comments to section 3—4 support such a view by stating that a *nolle prosequi* by the prosecution after jeopardy has attached would be considered an improper termination of a proceeding and thus bar further reprosecution. Ill. Ann. Stat., ch. 38, par. 3—4, Committee Comments, at 126 (Smith-Hurd 1989).

Dismissal of charges may be conditioned on defendant's plea of guilty to other charges. In *People v. McCutcheon* (1977), 68 Ill. 2d 101, 368 N.E.2d 886, a felony count was nol-prossed so that defendant could enter a negotiated plea to a misdemeanor, but the misde-

meanor conviction was eventually vacated by the appellate court. The State was allowed to reinstate the felony count, despite defendant's double jeopardy argument, on the basis that jeopardy never attached to the vacated misdemeanor charge, and the dismissal of the felony charge was conditional.

■ Additionally, the State cites three Federal cases. (*Fransaw v. Lynaugh* (5th Cir. 1987), 810 F.2d 518; *United States v. Baggett* (11th Cir. 1990), 901 F.2d 1546, *cert. denied* (1990), 498 U.S. 862, 112 L. Ed. 2d 133, 111 S. Ct. 168; *Taylor v. Kincheloe* (9th Cir. 1990), 920 F.2d 599.) In these cases the defendant was allowed to enter a negotiated plea after a trial had begun, and the trial was then terminated. When problems later developed and the plea agreement was not honored (a misunderstanding became apparent at sentencing in *Fransaw*; defendant's promised cooperation was not forthcoming in *Baggett*; the plea was vacated by appellate court in *Taylor*), the prosecutor was allowed to reinstate the original charges. We find these cases distinguishable. In each of these cases the court actually accepted the plea agreement before the trial was terminated. In these cases the trial judge inquired of the defendant regarding the nature of the plea agreement, and that information was contained in the record. In the present case the trial court did not accept any plea agreement, did not inquire of the defendant, and the contents of any agreement are not contained in the record. From this record we cannot say the apparent repudiation of the purported agreement is solely attributable to the defendant. Finally, the trial judge here advised defendant that jeopardy had attached, and that the waiver of jeopardy which defendant's counsel had announced to the court would not be effective.

■ Supreme Court Rule 402 (134 Ill. 2d R. 402) outlines the procedure to be followed when a defendant is pleading guilty to an offense. Specifically, Rule 402 seeks to ensure that the defendant is aware (1) of the nature of the charge; (2) of the maximum and minimum sentence prescribed by law; (3) of his right to plead not guilty; and (4) that by pleading guilty he waives the right to trial by jury and the right to be confronted with the witnesses against him. Under Rule 402, the court is also to determine whether the plea of guilty is voluntary. (134 Ill. 2d Rule 402(b).) Rule 402 admonitions ensure that when a defendant pleads guilty to an offense, that plea is an informed decision. This procedure was not followed here. To hold the defendant to an ephemeral "plea agreement," which was not reduced to writing and on which no admonitions were given, would circumvent the spirit of Rule 402.

■ The State contends, however, that the defendant waived any claims to double jeopardy at trial in No. 89—CF—691, by the remarks of defense counsel. A waiver is an intentional relinquishment or abandonment of a known right or privilege. (*Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019.) In *Ricketts v. Adamson* (1987), 483 U.S 1, 97 L. Ed. 2d 1, 107 S. Ct. 2680, the United States Supreme Court acknowledged that the right to claim double jeopardy is a right which can be waived. There, the plea agreement which defendant signed contained a clause stating that if defendant refused to testify as provided in the agreement, the agreement would be null and void and the original charge would automatically be reinstated. (*Ricketts*, 483 U.S. at 9, 97 L. Ed. 2d at 11, 107 S. Ct. at 2685.) The Court found the defendant had affirmatively waived his right to claim double jeopardy.

The formality and concreteness of the waiver in *Ricketts* is not present here. In *Ricketts*, the defendant signed a document acknowledging he understood that the former charges would be reinstated if he failed to fulfill his part of the bargain. Here, no such clarity exists. The judge's comments at trial in No. 89—CF—691, *i.e.*, that he believed that any such waiver would be ineffective, surely affected the defendant's perception of the purported waiver and the need to actively rebut or oppose it. Courts indulge every reasonable presumption against waiver of fundamental constitutional rights (*Aetna Insurance Co. v. Kennedy* (1937), 301 U.S. 389, 393, 81 L. Ed. 1177, 1180, 57 S. Ct. 809, 811-12) and do not presume acquiescence in the loss of fundamental rights (*Ohio Bell Telephone Co. v. Public Utilities Comm'n* (1937), 301 U.S. 292, 307, 81 L. Ed. 1093, 1103, 57 S. Ct. 724, 731). On the facts before us and given this presumption against waiver, it cannot be said that the defendant waived his right not to be twice put in jeopardy for the same offense. A defendant can waive his right to claim double jeopardy, but we will not infer a waiver where the circumstances suggest the defendant may not have been aware of the consequences which flowed from his actions.

For the reasons stated herein, the judgment of the circuit court is affirmed.

Affirmed.

KNECHT and LUND, JJ., concur.